488 A.2d 1009

**Laverne D. POPE, et al.**

v.

**SUN CAB COMPANY, INC., et al.**

**No. 789, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

March 11, 1985.

Ronald H. Jarashow, Annapolis (Franch, Earnest & Cowdrey, P.A., Annapolis, on the brief, for appellant, MAIF).

Josef E. Rosenblatt, Baltimore (H. Morton Rosen and Rosen & Esterson, Baltimore, on the brief for appellant, Pope).

Marvin I. Singer, Baltimore, for appellees.

Argued before WILNER, ALPERT and GETTY, JJ.

GETTY, Judge.

This appeal raises two questions; one substantive, one procedural. The substantive question is whether the court below erred in deciding that Md.Ann.Code art. 48A, § 538(b) (1979) excuses taxicabs from carrying the uninsured motorists insurance that would otherwise be required by Md.Ann.

Code Art. 48A, § 541(c) (1979, 1984 Cum.Supp.). The procedural question is whether the trial court erred in deciding the substantive question in the course of a demurrer and Show Cause Order rather than in a pending declaratory judgment action.

Three cases, all from the Circuit Court for Baltimore City (Ward, J.), were consolidated for purposes of this appeal. The background of each is as follows:

### 1. *Pope v. Sun Cab*

Laverne D. Pope, *et al.*, (hereinafter "Pope"), passengers in a taxicab owned and operated by the Sun Cab Company, Inc. (hereinafter "Sun Cab"), filed suit on February 16, 1983, for injuries allegedly incurred on July 25, 1982, when their cab stopped suddenly to avoid colliding with another automobile. Sterling Owen Paige and Linda Paulette Regan Paige, the alleged owners of the other car, were named as defendants along with Sun Cab and its driver, William Barnes.

When, during discovery, the Paiges both denied having been the operator of the other car, Pope filed an amended claim on December 2, 1983, including therein an uninsured motorist claim against Sun Cab. This claim, based upon § 541(c), alleged that the driver of the other vehicle could not be identified.

Sun Cab demurred to the uninsured motorist claim, raising the definitional section of § 538(b) as excusing it from obtaining uninsured motorist coverage. When the Maryland Automobile Insurance Fund (hereinafter "MAIF") learned of Sun Cab's position regarding the scope of the uninsured motorists coverage law, it recognized that if Sun Cab prevailed on this point the plaintiffs would assert their uninsured motorists claims against the uninsured motorists division of MAIF. The court added MAIF as a party to the proceeding before deciding Sun Cab's demurrer to Pope's claim.

The court ordered MAIF to show cause why Pope should not be allowed to sue it on their uninsured motorists claim. MAIF argued that § 541(c) did require Sun Cab to provide uninsured motorists coverage. On the same date, MAIF filed for declaratory judgment on this issue. MAIF also filed a Motion for Continuance and/or Stay in the *Pope* case until the court had decided MAIF's declaratory judgment action. By orders of May 9, 22 and June 7, 1984, the court denied MAIF's request for a continuance of *Pope*, sustained Sun Cab's demurrer to that suit on the ground that § 538(b) excluded Sun Cab from the § 541(c) uninsured motorists coverage requirement, and granted Pope's petition to sue MAIF.

2. *Bailey v. MAIF*

This companion case began as a Petition to sue MAIF filed by Lillian R. Bailey who, as a passenger in another Sun Cab, was injured when the cab was struck by a hit-and-run driver. In an earlier suit brought by Bailey on the same facts, the court had sustained without leave to amend Sun Cab's demurrer, again ruling that § 538(b) excluded taxis from the § 541(c) uninsured motorists coverage requirements. In turning to MAIF for relief, Bailey alleged that Maryland law does not require Sun Cab to carry uninsured motorists coverage. In MAIF's Answer to the court's Show Cause Order, it again raised, as a defense, the argument that § 538(b) does not operate to exclude taxis from the uninsured motorists coverage requirements of § 541(c). MAIF filed a Motion for Continuance and/or Stay pending the outcome of the same declaratory judgment action referred to earlier, *MAIF v. Sun Cab and Pope.* Again, the judge denied the Motion for Stay and granted Bailey's petition to sue MAIF.

3. *MAIF v. Sun Cab and Pope*

MAIF filed suit on April 3, 1984, to obtain a declaratory judgment on the proper interpretation of § 541(c). Sun Cab responded to MAIF's action by filing a Motion Raising

Preliminary Objection to the effect that the issue of whether § 541(c) required it to carry uninsured motorists coverage was already being addressed in its pending demurrer to *Pope v. Sun Cab*. When Bailey filed her petition to sue MAIF, MAIF added her as a party defendant to its declaratory judgment action. Sun Cab thereupon renewed its Motion Raising Preliminary Objection, adding as grounds therefor that the Circuit Court for Baltimore City had already sustained Sun Cab's demurrer in *Bailey v. Sun Cab* on the basis that § 538(b) excluded it from the § 541(c) uninsured motorists coverage requirements. The trial court granted both Motions Raising Preliminary Objection on June 7.

## I

■ Appellants complain, first, that the trial court abused its discretion when it granted Sun Cab's two Motions Raising Preliminary Objections to MAIF's declaratory judgment action. MAIF urges that the first motion, which was grounded upon Sun Cab's pending demurrer in *Pope v. Sun Cab*, should have been denied because under former Md. Rule 323(a)(6) MAIF was not a proper party to *Pope* until after Pope's petition to sue MAIF was granted, and because the action in *Pope* was not for the same cause as that in the declaratory judgment action.

We do not find any merit to MAIF's complaint that it was not an original party to the tort action. MAIF was made a party—at its specific request—in time to oppose Sun Cab's demurrer. The Answer, exhibits, memorandum and affidavit filed by MAIF in answer to the court's Show Cause Order in *Pope* persuade us that it was accorded an adequate opportunity to be heard on its interpretation of §§ 538(b) and 541(c).

■ We further find that Sun Cab's demurrer in *Pope* rendered that action for the "same cause" as the declaratory judgment action. The Court of Appeals has set forth the chief criterion by which we are to review a trial court's

exercise of its discretion to deny declaratory judgment on the grounds of the pendency of another action:

> "If the issue ... were not the *ultimate* to be determined in a pending suit by a third party, a declaratory judgment would be appropriate. But where ... the question to be resolved in the declaratory judgment action will be decided in pending actions, it is inappropriate to grant a declaratory judgment." *Brohawn v. Transamerica Insurance Co.*, 276 Md. 396, 406, 347 A.2d 842 (emphasis added).

Although no Maryland court has defined the term, we think that by "ultimate issues" the *Brohawn* Court must have meant to include those issues raised by a defendant which, if resolved in his favor, will provide him with an absolute defense to the pending suit. The statutory interpretation issue raised by Sun Cab's demurrer to *Pope* was, in our view, such an ultimate issue.

There remain two other objections to the trial court's decision to deny declaratory judgment, both of which go to the form of the court's order. First MAIF points out that appellate courts are quick to reverse dismissals based upon Rule 323(a)(6) motions. *See, e.g., Coppage v. Orlove*, 262 Md. 665, 278 A.2d 587 (1971) (*per curiam*); *Europa Books, Inc. v. Pomerleau*, 41 Md.App. 114, 395 A.2d 1195 (1979). We think, however, that the chief objection to disposing of a declaratory judgment action on a motion raising preliminary objection is that, as with demurrers, the courts "wish to avoid dismissals without a declaration of the rights of the parties." *Wiggins v. State*, 22 Md.App. 291, 295, 324 A.2d 172 (1974). Here we note that the court's order granting Sun Cab's motions did declare the rights of the parties, incorporating by reference "those reasons stated by Sun Cab Co. in its [Second] Motion Raising Preliminary Judgment [sic] filed on or about May 14, 1984," *i.e.*, that "Maryland Annotated Code, Article 48A, Section 541(c) did not require Sun Cab Company, Inc. to maintain uninsured motor vehicle coverage."

The second problem with the procedure below arises from the fact that the court sustained Sun Cab's demurrers in both *Pope* and *Bailey* before it granted Sun Cab's motions alleging a pending action for the same cause in *MAIF*. Technically, at the time the court granted the motions, their prerequisites—a "pending" action between the same parties for the same cause—no longer existed. Appellant, however, has not raised this point and hence we will not discuss it beyond noting that, in the past, when a declaration for declaratory judgment raised a pure question of law, the Court of Appeals permitted the trial court to treat a demurrer to that declaration as a motion for summary declaratory judgment. *See Hunt v. Montgomery County*, 248 Md. 403, 237 A.2d 35 (1968).

 Finally, MAIF points out that a declaratory judgment below would have resolved the statutory interpretation issue that impinged upon several pending tort cases and saved the various plaintiffs the time and expense they incurred in locating the proper party defendant to their uninsured motorists claims. *See* 276 Md. at 396, 347 A.2d 842. We agree, just as we agree that the evidentiary hearing and discovery accorded by a declaratory judgment action may be useful in determining legislative intent. For these reasons we think the trial court had the discretion to grant declaratory judgment even when Sun Cab's demurrer that raised the same issue was still pending in another suit. *See Coppage v. Orlove*, 262 Md. 665, 666, 278 A.2d 587 (1971) (*per curiam*) (in a proper case a court may stay proceedings pending the determination of another proceeding that may affect the issues raised).

 It does not follow, however, that the court therefore abused its discretion in denying a stay of the tort cases. We note that Cts. & Jud.Proc.Art., § 3–403(a) (1984 Repl. Vol.) states that "[a]n action or proceeding is not open to objection on the ground that a declaratory judgment or decree is prayed for." Without passing upon the wisdom of the procedure below, we find that once the court exercised

its discretion not to stay the tort cases, MAIF was made a party to *Pope* and given an adequate opportunity to argue its position regarding the applicability of § 541(c) to Sun Cab. Only then did the court render its decision on the statutory interpretation issue. We fully agree with the trial court that at this point the proper way for MAIF to obtain a review of that statutory interpretation is through an appeal to this Court, not through a declaratory judgment action before the same circuit court on the same issue already decided. *See Hamilton v. McAuliffe*, 277 Md. 336, 342, 353 A.2d 634 (1976).

Therefore, we will proceed to the merits of MAIF's claim that the trial court erred in finding that the § 538(b) definition of "motor vehicle" operates to exclude taxicabs from the uninsured motorists coverage requirement that § 541(c) mandates for "every policy of motor vehicle liability."

II

Section 538 reads, in pertinent part:

§ 538. Definitions.

As used in this subtitle,

\* \* \* \* \* \*

(b) *"Motor vehicle"* means automobile and any other vehicle, including a trailer, operated or designed for operation upon a public road by any power other than animal or muscular power but does not include a vehicle as defined in § 11–165 and 11–105 of the Transportation Article of the Annotated Code of Maryland.

Section 11–165 of the Transportation Article defines "taxicab." Section 11–105 defines "bus:" The sole issue remaining for our determination is whether § 538(b), which excludes taxis from the definition of motor vehicles, is applicable to § 541(c)(2), which reads:

(2) In addition to any other coverage required by this subtitle, every policy of motor vehicle liability insurance issued, sold, or delivered in this State after July 1, 1975 shall contain coverage, in at least the amounts required

under Title 17 of the Transportation Article, for damages which the insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in an accident arising out of the ownership, maintenance, or use of such uninsured motor vehicle. There shall be available to the insured the opportunity to contract for higher amounts than those provided under Title 17 of the Transportation Article if these amounts do not exceed the amounts of the motor vehicle liability coverage provided by the policy. The coverage required under this subsection (c) shall be in such form and subject to such conditions as may be approved by the Commissioner of Insurance. Any provision in any policy of motor vehicle liability insurance issued after July 1, 1975, with respect to the coverage provided for damages sustained by the insured as a result of the operator of an uninsured motor vehicle, which commands or requires the submission of any dispute between the insured and the insurer to binding arbitration, is prohibited and shall be of no legal force or effect. In no case shall the uninsured motorist coverage be less than the coverage afforded a qualified person under Article 48A §§ 243H and 243I. However, the insurer may exclude from coverage benefits for the named insured or members of his family residing in the household when occupying, or struck as a pedestrian by, an uninsured motor vehicle that is owned by the named insured or a member of his immediate family residing in his household. The coverage required under this subsection shall be primary to any right to recover from the Maryland Automobile Insurance Fund pursuant to § 243H of this article.

In *Mount v. Mount,* 59 Md.App. 538, 476 A.2d 1175 (1984), we set forth the applicable law regarding legislative intent. We said:

"The cardinal principle of statutory construction is to determine the intent of the legislature. If the language of the statute is clear and unambiguous, then the legislative intent is determined by giving that language its

normal and customary meaning. The basic rule has always been to look first to the language of the statute and to look elsewhere *only* if that language is unclear and ambiguous. *Ryder Truck Lines v. Kennedy,* 296 Md. 528, 535–36, 463 A.2d 850 (1983) and the cases cited therein. If no ambiguity or obscurity is found in the statutory language, there is no need to look elsewhere for the legislative intent. *Utt v. State,* 293 Md. 271, 287, 443 A.2d 582 (1982); *Vallario v. State Roads Comm'n,* 290 Md. 2, 6–7, 426 A.2d 1384 (1981); *Slate v. Zitomer,* 275 Md. 534, 539, 341 A.2d 789 (1975). (Emphasis supplied.)

■ We need not resort to extrinsic aids such as legislative history or committee reports in resolving the case *sub judice,* because the language of the statute is clear and unambiguous. We hold, for the reasons hereinafter set forth, that the legislative intent was to exclude taxicabs and buses from the general requirement of maintaining uninsured motorist coverage.

■ Our construction of the statute does not subvert the protection afforded to accident victims. The statutory scheme, in our view, discloses a priority in determining those against whom claims may be asserted. The last sentence of Sec. 541(c) states:

"The coverage required under this subsection shall be primary to any right to recovery from the Maryland Automobile Insurance Fund pursuant to Sec. 243H of this Article."

Thus, under proper circumstances, passengers in taxicabs may seek recovery for injuries caused by uninsured motorists from MAIF.

MAIF's argument that under Sun Cab's interpretation of the statute taxicabs would not be required to maintain *any* liability insurance (because they could never be uninsured motor vehicles) fails to take into consideration the regulatory structure of Article 78 of the Annotated Code. The Public Service Commission regulates the licensing, operation and fare schedules of taxicab companies. Section 47

requires taxicabs to maintain liability insurance coverage in amounts approved by the Commission. Thus, the Commission decides the coverage necessary for the protection of the public.[1] Additionally, if § 541 applied to taxicabs, as MAIF contends, the coverage to be maintained would be reduced, because the PSC requires taxicabs to provide $25,-000/$50,000 in coverage. By contrast, Title 17 of the Transportation Article requires vehicle liability coverage of $20,-000/$40,000 as minimum security.

Subtitle 35 of Article 48A is entitled "Motor Vehicle Casualty Insurance—Required Primary Coverage." Immediately following the heading is Section 538 which defines the term "Motor Vehicle." House Bill No. 1272, Ch. 655 of the Laws of 1977, amended § 538(b) by specifically excluding taxicabs from the definition.[2]

Section 539 concerns basic primary coverage in motor vehicle liability policies providing for payment of medical expenses and loss of income by the named insured, members of his household and others named therein. House Bill 1272 amended § 539 by adding subsection (b) excluding taxicabs from its provisions. Again, in 1978, buses were also excluded.

Section 540 relates to the payment of benefits without assessing fault; that section is not pertinent to the issue herein.

Section 541(c) requires that uninsured motorist coverage be included in every policy of motor vehicle liability insurance. Reading subsection (c) together with the exclusion set forth in § 538(b) establishes a clear legislative intent to exclude taxicabs from the general requirement that all motor vehicles must maintain uninsured motorist coverage.

---

1. Coverage requirements for taxicabs operating in Baltimore City are set forth in COMAR 20.90.02.19 and uninsured motorists coverage is not included.

2. In 1978 the Legislature added buses as an exclusion in the definition of motor vehicles in Sec. 538(b).

MAIF's argument, that specific legislation is required to exempt taxicabs from maintaining uninsured motorist coverage, would render the exemption in § 538(b) a nullity. We believe that the Legislature intended that § 538(b) have a wider scope than MAIF accords it. Otherwise, House Bill 1272 would not have enacted the exemption contained in § 538(b).

Thus, we must either construe the statute as excluding taxicabs and buses in two places (§§ 538(b) and 539(b)) as to medical expenses (PIP) and in one place (§ 538(b)) as to uninsured motorists, or else disregard the § 538(b) definitional section except insofar as it relates to PIP coverage, from which taxicabs and buses are already specifically excluded by virtue of § 539(b).

We conclude that the Legislature, in enacting House Bill No. 1272, intended to exempt taxicabs from certain primary coverage provisions including uninsured motorist coverage.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.