506 A.2d 641

MARYLAND AUTOMOBILE INSURANCE FUND

v.

SUN CAB COMPANY, INC.

No. 83, Sept. Term, 1985.

Court of Appeals of Maryland.

April 2, 1986.

Joseph A. Schwartz, III (Joseph A. Schwartz, III, P.A., on brief), Baltimore, for appellant.

Marvin I. Singer, Baltimore, for appellee.

Argued before MURPHY, C.J., SMITH, COLE, RODOW-SKY, COUCH and McAULIFFE, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (retired), Specially Assigned.

McAULIFFE, Judge.

The principal issue in this case is whether ch. 655 of the 1977 Laws of Maryland had the effect of excluding taxicabs from the class 'of motor vehicles for which uninsured motorist (UM) insurance coverage is required. We shall affirm the determination of the trial court and the Court of Special Appeals that it had precisely this effect.

The procedural history of the three cases that originated in the Circuit Court for Baltimore City and were consolidated on appeal was set forth by the Court of Special Appeals in *Pope v. Sun Cab Company, Inc.*, 62 Md.App. 218, 222–24, 488 A.2d 1009 (1985), and need not be repeated here. It is sufficient to note that as a result of two separate accidents involving injuries allegedly caused by uninsured motorists to passengers occupying cabs owned by Sun Cab Company, two tort actions were filed. In one of the actions the plaintiffs sought UM benefits from Sun Cab, and in both actions the plaintiffs sought leave to sue the Maryland Automobile Insurance Fund (MAIF). A third action was filed, in which MAIF sued Sun Cab and all plaintiffs in the two tort actions, seeking a declaratory judgment that UM coverage continued to be required for taxicabs notwithstanding the amendment to the Motor Vehicle Casualty Insurance Subtitle of Article 48A, Maryland Code (1957, 1979 Repl.Vol., 1985 Cum.Supp.) accomplished by ch. 655 of the 1977 Laws. All parties agreed that the Legislature intended by the amendment to exclude taxicabs from the requirement of first-party Personal Injury Protection (PIP)

coverage. However, they sharply disagreed over whether the Legislature had intended also to exclude taxicabs from the requirement of providing UM coverage. Before addressing that question of statutory construction, we consider a procedural issue raised by MAIF.

## I

■ MAIF contends that the trial judge committed procedural error by construing the statute in the tort cases, rather than in the declaratory judgment action. MAIF was a party in each of the tort actions at the time the challenged decision was made, and was given full opportunity to participate and present argument in support of its position. The ultimate question to be determined in the declaratory judgment action was squarely presented for resolution in the tort actions, and the trial judge properly elected to resolve it as a part of those actions. *Brohawn v. Transamerica Insurance Company*, 276 Md. 396, 406, 347 A.2d 842 (1975); *A.S. Abell Co. v. Sweeney*, 274 Md. 715, 720–21, 337 A.2d 77 (1975). MAIF's claim that it was thereby denied the benefit of discovery procedures it had intended to pursue in the declaratory judgment action is unavailing because the issue is one of statutory construction and no discovery was required.

## II

By the enactment of ch. 73 of the 1972 Laws of Maryland the Legislature made substantial changes in the insurance law pertaining to motor vehicles. Of particular significance was the addition of new §§ 538–546 to Maryland Code, Article 48A, the Insurance Code. These additional sections comprised a new subtitle, entitled "Motor Vehicle Casualty Insurance—Required Primary Coverage." Section 538 provided definitions for the subtitle, and defined "motor vehicle" to mean:

[An] automobile and any other vehicle, including a trailer, operated or designed for operation upon a public road by any power other than animal or muscular power.

Section 539 required that every policy of motor vehicle liability insurance issued, sold or delivered after January 1, 1973 include PIP coverage. Section 541, in addition to other provisions, required that all insurers offer no-fault collision coverage, and permitted the issuance of first-party UM coverage.

By the enactment of ch. 562 of the 1975 Laws of Maryland the Legislature amended § 541 to require UM coverage in every policy of motor vehicle liability insurance issued, sold, or delivered after July 1, 1975, and further provided that such coverage would be primary to the right to recover from MAIF for damages caused by an uninsured motorist.

In 1977, House Bill 1272 was enacted as ch. 655 of the Laws of Maryland, changing Article 48A by amending § 538(b) and adding subsection b to § 539. The bill recited its purpose as "exempting certain vehicles, as defined in the Vehicle Laws, from certain required primary coverage insurance provisions...." We set forth § 538 as it was amended, with the new matter added shown in italics:

As used in this subtitle,

(a) ....

(b) "Motor vehicle" means automobile and any other vehicle, including a trailer, operated or designed for operation upon a public road by any power other than animal or muscular power *but does not include a vehicle as defined in § 11–165 of the Transportation Article of the Annotated Code of Maryland.*

Newly added § 539(b) provided:

The provisions of this section do not apply to policies issued, sold or delivered in this state to insure vehicles as defined in § 11–165 of the Transportation Article of the Annotated Code of Maryland.

Section 11–165 of the Transportation Article, Maryland Code (1977, 1984 Repl.Vol.) defines a taxicab.[1] Section 541, which requires UM coverage, was not amended by this bill.

Appellees contend that the amendment to § 538(b) clearly excluded taxicabs from the definition of "motor vehicle" for the purposes of the entire subtitle, and therefore had the effect of excluding taxicabs from the UM coverage required by § 541 as well as the PIP coverage required by § 539. MAIF counters by arguing that House Bill 1272 is ambiguous because it specifically amends § 539 to exclude taxicabs from PIP coverage, but makes no corresponding change to § 541. MAIF argues that this ambiguity requires resort to intrinsic and extrinsic aids to determine the legislative intent. In addition to the alleged internal inconsistency in the bill, MAIF asks that we consider three indicators of legislative intent:

1) The purpose clause of House Bill 1272 demonstrates that it is intended to affect only *primary* coverage insurance provisions, and UM has never been classified as primary coverage by the Legislature.

2) The construction of the statute advanced by appellees would produce a bizarre result, in that it would exclude taxicabs from the requirement of mandatory liability insurance.

3) Legislative history in the form of written communications to the legislators and a Fiscal Note prepared by the Department of Fiscal Services demonstrates a contemporaneous understanding by those dealing with the bill that it affected only PIP coverage.

Initially, we find of doubtful validity the argument that the Legislature intended the phrase "primary coverage" to mean PIP and not UM coverage. Primary coverage generally refers to the policy that first must answer for the loss.

---

1. By nearly identical language in ch. 819 of the 1978 Laws of Maryland, buses were also excluded from the definition of motor vehicles in § 538(b), and as vehicles specifically excluded from the PIP coverage required by § 539(b).

As used here, however, it may well have referred to first-person as opposed to third-party coverage. In that sense, the term would apply equally to PIP, collision and UM, but not to liability coverage. If interpreted in this manner, there is no inconsistency between the purpose clause of the bill and the effect of excluding taxicabs from the requirement of UM coverage. At the time House Bill 1272 was drafted and enacted, both UM and PIP were required coverages, and the caption of the subtitle of the Insurance Code that embraced both of them was "Motor Vehicle Casualty Insurance—Required Primary Coverage." Consequently, there was no facial inconsistency between the stated purpose "of exempting certain vehicles ... from certain required primary coverage insurance provisions" and the effect of excluding taxicabs from PIP and UM coverage.

■ MAIF's second argument is based upon the familiar rule of statutory construction that a statute should not be construed in a way that would lead to absurd results, or consequences inconsistent with common sense. *Blandon v. State*, 304 Md. 316, 319, 498 A.2d 1195 (1985); *State v. Intercontinental Ltd.*, 302 Md. 132, 137, 486 A.2d 174 (1985); *Holy Cross Hosp. v. Maryland Empl. Sec.*, 288 Md. 685, 698–99, 421 A.2d 944 (1980). The untoward result posited by MAIF is the exclusion of taxicabs from the requirement of providing liability insurance coverage. MAIF reasons that the basic requirement for liability coverage of motor vehicles arises from this subtitle of the Insurance Code, and that removal of taxicabs from the definition of motor vehicles in this subtitle therefore exempted them from any statutory requirement to provide liability insurance. The Court of Special Appeals disagreed with this reasoning on the basis that the Legislature had granted the Public Service Commission (PSC) jurisdiction over taxicabs, and that liability insurance coverage for taxicabs was required by the PSC. We reach the same

result, but on a different basis.[2] We find that minimum liability coverage is required for all motor vehicles (with certain exceptions not here relevant) by §§ 17–101 thru 17–104 of the Transportation Article, and that the exclusion of taxicabs from the definition of a motor vehicle in § 538(b) of Article 48A does not affect this basic requirement. Section 541(a) of Article 48A is clear on this point:

> Nothing in this subtitle affects or limits the provisions of Title 17 of the Transportation Article, and every policy of motor vehicle liability insurance issued, sold, or delivered in this State shall provide the minimum liability coverage specified therein.

The definitions of "motor vehicle" and "taxicab" contained in §§ 11–135 and 11–165 of the Transportation Article are controlling, and taxicabs are clearly included within the definition of a "motor vehicle" as that term is used in Title 17.

Finally, MAIF points to an extrinsic aid to construction—the legislative history—in support of its contention that the Legislature did not intend to exclude taxicabs from the

---

**2.** The Court of Special Appeals correctly observed that the PSC has been granted certain general jurisdiction over taxicabs, as common carriers. However, the Legislature has specifically provided for PSC regulation of taxicab insurance in excess of the minimum required by the Maryland Vehicle Law (Titles 11 thru 27 of the Transportation Article) only when a permit is required. Maryland Code (1957, 1980 Repl. Vol., 1984 Cum.Supp.) Article 78, § 47. Currently, a permit is required for taxicab operations in Baltimore County, Baltimore City, Cumberland, Hagerstown, and any other incorporated city or town having a population of more than 50,000 persons. Article 78, § 45. In these areas of the State the PSC requires liability insurance with minimum coverage of $25,000.00 for each person, $50,000.00 for each accident, and $10,000.00 for property damage, or a suitable bond in lieu thereof. COMAR 20.90.02.19 and 20.90.03.17. Additionally, the Washington Metropolitan Area Transit Commission has been given authority to require greater liability insurance coverage for taxicabs operating between Maryland, Virginia and the District of Columbia. Transportation Article, § 10–203 (Washington Metropolitan Area Transit Regulation Compact) Title II, Article XII, § 9(b). Local authorities and political subdivisions may under certain circumstances require greater than minimum liability coverage for taxicabs. Transportation Article § 25–101.1.

requirement of providing UM coverage. The files maintained by the Department of Legislative Reference for House Bill 1272 and Senate Bill 784 (a companion bill allowed to lapse upon passage of the House Bill) contain documentary evidence that persons communicating with the Legislature concerning these bills were proceeding on the assumption that the effect of the bills would be to remove taxicabs from the requirement of PIP coverage only. The Fiscal Note submitted for House Bill 1272 by the director of the Division of Fiscal Research provided the following summary:

> This bill exempts taxicabs from the requirement that motor vehicle liability insurance on them must include certain accident coverage for passengers or pedestrians that provides payments for the expenses of medical, hospital and disability payments.

The Fiscal Note submitted for Senate Bill 784 contained the identical summary, but added the words "i.e., economic loss coverage." A letter submitted by the executive director of MAIF disclosed that MAIF then insured 807 taxicabs, and discussed "the premium and loss development for MAIF as a result of maintaining PIP coverage for the aforementioned 807 taxicabs." No mention was made of any impact on UM coverage. In another letter forwarded by the executive director of MAIF the premiums for economic loss coverage and uninsured motorist coverage are separately stated, after which the statement is made that "this bill effects (sic) economic loss premium only."

Recognizing that the legislative history offers impressive evidence of an interpretation by non-legislators, communicated to the appropriate legislative committees, that House Bill 1272 operated to exclude taxicabs only from the requirement of PIP coverage, we return to the central question of whether there exists such a facial inconsistency or ambiguity in the statute as would justify resort to an extrinsic aid to determine the true intent of the Legislature. We hold that there is not, and that the clear language of the statute must be given effect.

The general rule was well stated by the Supreme Court of Rhode Island a century ago:

It is an elementary proposition that courts only determine, by construction, the scope and intent of a law when the law itself is ambiguous or doubtful. If a law is plain, and within the legislative power, it declares itself, and nothing is left for interpretation. It is as binding upon the court as upon every citizen. To allow a court, in such a case, to say that the law must mean something different from the common import of its language, because the court may think that the penalties are unwise or harsh, would make the judicial superior to the legislative branch of the government, and practically invest it with the law-making power. The remedy for a harsh law is not in interpretation, but in amendment or repeal. *State v. Duggan,* 15 R.I. 403, 6 A. 787, 788 (1886).

In *Erwin and Shafer Inc. v. Pabst Brewing Co.,* 304 Md. 302, 308–09, 498 A.2d 1188 (1985), the Court said, "[W]e initially look to the language of the statute. If it is clear and unambiguous, then we need look no further." In *State v. Intercontinental Ltd., supra,* 302 Md. at 137, 486 A.2d 174, we said, "[T]he primary source of legislative intent is the language of the statute itself.... Where the statutory provisions are unambiguous, no construction is required ... so that a plainly worded statute must be construed without forced or subtle interpretations designed to extend or limit the scope of its operation." *See also City of Baltimore v. Hackley,* 300 Md. 277, 283–84, 477 A.2d 1174 (1984) and *Ryder Truck Lines v. Kennedy,* 296 Md. 528, 535–36, 463 A.2d 850 (1983).

The amendment of § 538(b) accomplished by House Bill 1272 is clear and unambiguous. It excludes taxicabs from the definition of a motor vehicle for the purposes of the subtitle. No other construction is possible, and none has been suggested by MAIF. The exclusion contained in the amendment to § 539(b), while redundant, is not inconsistent with the amendment made to the definitional section. On the other hand, were we to accept MAIF's interpreta-

tion, we would be required to ignore entirely the amendment to § 538(b). We shall accept the plain and consistent meaning rather than the one which would treat as nonexistent the specific amendment to a subsection of the statute. If indeed the Legislature erred in expressing its intent, it is an error that must be remedied by the Legislature, and not by this Court.

JUDGMENT AFFIRMED.

APPELLANT TO PAY THE COSTS.