747 A.2d 725

**Robert L. BLACKBURN, et al.**

v.

**BOARD OF LIQUOR LICENSE COMMISSIONERS FOR BALTIMORE CITY.**

No. 6749, Sept. Term, 1998.

Court of Special Appeals of Maryland.

March 6, 2000.

**618**

Peter A. Prevas (Prevas & Prevas, on the brief), Baltimore, for appellants.

Brian L. Oliner, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Baltimore, Gerald Langbaum and John K. Barry, Assistant Attorneys General, on the brief), Annapolis, for appellee.

Argued before EYLER, KENNEY and MARVIN H. SMITH (Retired, Specially Assigned), JJ.

MARVIN H. SMITH, Judge, Retired, Specially Assigned.

In this appeal, appellants Robert L. Blackburn and Holmes & Churchill, Ltd., t/a Windsor Club (hereinafter collectively referred to as "the licensees") challenge a decision of the Circuit Court for Baltimore City, which affirmed a finding by the Board of Liquor License Commissioners for Baltimore City ("the Board") that the licensees violated the Board's rules. Because we conclude that the Board failed to set forth sufficient findings of fact to support its decision, we shall

direct the court below to remand the case to the Board for further proceedings.

## FACTS

Blackburn and Holmes & Churchill, Ltd. hold the liquor license for the Windsor Club. Holmes & Churchill, Ltd. owns the establishment. The Windsor Club's liquor license is a Class B–D–7 license which was transferred from another establishment. At the time of the transfer, the licensees believed that smoking would soon be banned in places of public accommodation. In order to avoid the smoking ban, they requested that the Board specify on the license that the Windsor Club was a "private membership club." The Board granted the request, noting on the face of the license: "PREMISES MUST OPERATE AS A PRIVATE MEMBER-SHIP CLUB ONLY." The Windsor Club apparently is the only establishment with a Class B–D–7 license that operates under such a restriction. Members of the Windsor Club pay $500.00 to join, then $250.00 each year to renew their member-ships.

At 3:15 a.m. on May 24, 1998, an inspector for the Board of Liquor License Commissioners for Baltimore City entered the premises with several police officers. The inspector thereaf-ter cited the licensees for selling and allowing the consumption of alcohol on the premises after hours. By notice dated July 7, 1998, the Board informed the licensees that they were accused of violating Rule 4.05(a) and (b) of the Rules and Regulations for the Board of Liquor License Commissioners for Baltimore City. Rule 4.05(a) provides: "No licensee shall permit any person to consume alcoholic beverages on the licensed premises during hours when such sales are prohibited by law." Rule 4.05(b) states: "No alcoholic beverages shall be served, dispensed, furnished or given away in any part of the premises during the hours when such sales are prohibited by law." The Board instructed the licensees to appear for a hearing on July 23, 1998 "to show cause why your Alcoholic Beverage License ... should not be suspended or re-voked...."

The inspector and a police officer testified against the licensees at the hearing. Blackburn testified on behalf of the licensees. Counsel for the licensees then pointed out that there was no evidence that anyone had actually seen alcohol being served after 2:00 a.m. Counsel concluded that therefore there was insufficient evidence of a violation of Rule 4.05(b). Counsel acknowledged that there was evidence that persons were consuming alcohol on the premises after hours. He argued, however, that Rule 4.05(a), which purports to prohibit such consumption, can not lawfully be applied to private membership clubs. The Board took counsel's arguments under advisement. Subsequently, by letter dated August 12, 1998, it informed counsel that it had rejected the arguments. The Board stated:

> Because a previous violation of this Rule was dismissed on a technicality, this is actually a first conviction for Mr. Blackburn. He is, therefore, found guilty and a $500 fine or 5 day suspension is imposed. Because this is a first finding of guilt, the penalty will be suspended. Please note that if your client appears before the Board on a similar violation and [is] found guilty, the now suspended fine will be re-imposed.

(Emphasis omitted.)[1]

The licensees appealed to the Circuit Court for Baltimore City. A hearing was held at which counsel for the licensees and the Board presented argument. Counsel for the licensees posited that the Board had not determined that the licensees were guilty of serving alcohol after hours but only that they were guilty of allowing consumption after hours. He urged the court to determine that Rule 4.05(a) does not prohibit such consumption at private membership clubs. Counsel for the Board countered that the Board had found the licensees guilty of violating both part (b) and part (a) of Rule 4.05, and that both findings were proper.

---

1. Apparently because of an oversight, the Board's finding went only to Blackburn and not to Holmes & Churchill, Ltd. The appeal nevertheless is taken by Holmes & Churchill, Ltd. as well as Blackburn.

The court agreed with counsel for the Board that the guilty finding referred to both parts (a) and (b) of the Rule. It further determined that the evidence was sufficient to support the Board's finding that the licensees had engaged in after-hours sales. The court opined that, because the guilty finding could be affirmed on the basis of the violation of Rule 4.05(b), it was not necessary for the court to determine the validity of the Board's finding that a violation of Rule 4.05(a) had occurred.

## ISSUES

On appeal to this Court, the licensees argue, in essence, that:

I. The trial court erred in affirming the guilty finding where the Board failed to specify whether it found a violation of Rule 4.05(a), Rule 4.05(b), or both, and where the Board otherwise failed to set forth sufficient findings of fact to support its decision,

II. The trial court erred in refusing to review the Board's apparent finding that the appellants violated Rule 4.05(a), and in therefore failing to determine that the Rule does not apply to private membership clubs, and

III. The trial court erred in affirming the guilty finding on the basis of a violation of Rule 4.05(b) where, if in fact the Board found such a violation, the finding was not supported by substantial evidence.

Because we find merit in the licensees' first argument, we shall vacate the judgment of the trial court and remand the case to that court with instructions to remand to the Board for specific findings of fact and conclusions of law. We shall address the licensees' second and third arguments for guidance purposes.

## DISCUSSION

### I

### Specificity of Board's Decision

The Board's August 12, 1998 letter to counsel for the licensees stated, in its entirety:

At the conclusion of the public hearing concerning the violation of Board Rule 4.05(a) and 4.05(b) (sale and consumption after legal hours), the Board held the decision concerning the Windsor Club sub curia. In reviewing our files and Rules & Regulations, the Board is taking the position that although Mr. Blackburn has elected to operate as a private membership club, his alcoholic beverage license remains a Class "BD7" Beer, Wine & Liquor license which is not a club license. You have indicated that Article 2B, Section 11–305(b) refers to premises open to the public and have argued that since Mr. Blackburn is operating a private club he is not covered under the provisions of this section. It is our position that the sale and consumption of alcohol at this location must cease at 2:00 a.m.

Because a previous violation of this Rule was dismissed on a technicality, this is actually a first conviction for Mr. Blackburn. He is, therefore, found guilty and a $500 fine or 5 day suspension is imposed. Because this is a first finding of guilt, the penalty will be suspended. Please note that if your client appears before the Board on a similar violation and [is] found guilty, the now suspended fine will be re-imposed.

(Emphasis omitted.)

The licensees argue that the Board failed to make clear in the letter whether it found them guilty of violating Rule 4.05(a) or (b) or both. The licensees further contend that the Board failed to set forth the facts on which it based its finding or findings. The Board responds that, by stating in its letter that "the sale and consumption of alcohol" at the Windsor Club "must cease at 2:00 a.m.," the Board made clear that it found the licensees guilty of violating both parts (a) and (b) of Rule 4.05.

Judicial review of the Board's decision is authorized by Md.Code (1957, 1998 Repl.Vol., 1999 Cum.Supp.), § 16–101(a) of art. 2B. Section 16–101(e)(1)(i) provides:

Upon the hearing of such appeal, the action of the local licensing board shall be presumed by the court to be proper

and to best serve the public interest. The burden of proof shall be upon the petitioner to show that the decision complained of was against the public interest and that the local licensing board's discretion in rendering its decision was not honestly and fairly exercised, or that such decision was arbitrary, or procured by fraud, or unsupported by any substantial evidence, or was unreasonable, or that such decision was beyond the powers of the local licensing board, and was illegal. The case shall be heard by the court without the intervention of a jury. If, in the opinion of the court it is impracticable to determine the question presented to the court, in the case on appeal, without hearing of additional evidence, or if in the opinion of the court any qualified litigant has been deprived of the opportunity to offer evidence, or if the interests of justice otherwise require that further evidence should be taken, the court may hear such additional testimony to such extent and in such manner as may be necessary.

*Id.* The court may also remand to the Board for further proceedings. *See id.,* § 16–101(e)(4)(ii).

 While the last sentence of § 16–101(e)(1)(i) expressly permits the trial court, under certain circumstances, to hear additional evidence, the court may hear such evidence only to ascertain the veracity of findings of fact and conclusions of law reached by the Board. As the section does not authorize appeals *de novo,* the trial court may not hear additional evidence on matters not addressed by the Board. This Court has consistently explained that judicial review of a decision by the Board is similar to review of decisions by most other administrative agencies. *See generally Bd. of Liquor License Comm'rs for Baltimore County v. J.R. Bros., Inc.,* 119 Md. App. 308, 312, 705 A.2d 16, 18 (1998); *Patten v. Bd. of Liquor License Comm'rs for Baltimore City,* 107 Md.App. 224, 229–30, 667 A.2d 940, 943 (1995); *Baines v. Bd. of Liquor License Comm'rs for Baltimore City,* 100 Md.App. 136, 142–43, 640 A.2d 232, 235–36 (1994). "It is a cardinal rule of administrative appeals that 'a reviewing court ... shall apply the substantial evidence test to final decisions of an administrative

agency [such as the Board], but .it must not itself make independent findings of fact or substitute its judgment for that of the agency.'" *Id.* at 142, 640 A.2d at 235 (citation and emphasis omitted).

> "Judicial review of administrative action differs from appellate review of a trial court judgment. In the latter context the appellate court will search the record for evidence to support the judgment and will sustain the judgment for a reason plainly appearing on the record whether or not the reason was expressly relied upon by the trial court. However, in judicial review of agency action the court may not uphold the agency order unless it is sustainable on the agency's findings and for the reason stated by the agency."

*Id.* at 143, 640 A.2d at 235–36 (citation and emphasis omitted). Of course, the reviewing court may substitute its judgment for that of the Board on questions of law. *See Patten,* 107 Md.App. at 230, 667 A.2d at 943.

There is no express requirement that the Board set forth specific findings of fact and conclusions of law. *See Sheeler v. Handelman,* 212 Md. 152, 162, 129 A.2d 78, 84 (1957). In order for any meaningful review to be conducted, however, the Board must do so, at least informally. As the licensees contend, neither the transcript of the hearing before the Board nor the Board's letter to the licensees' counsel specifies which provision the licensees were found to have violated. Contrary to the Board's assertion, the statement in the letter that "[i]t is [the Board's] position that the sale and consumption of alcohol at [the Windsor Club] must cease at 2:00 a.m.," does not clarify the matter. The statement reveals what the Board believes the law to be, but does not suggest a finding as to any particular violation.

Because the Board failed to set forth the basis for its decision, or even to specify whether it found the licensees guilty of one violation or two violations, the trial court could not properly review the Board's decision. The court erred in affirming the decision on the ground that the evidence supported a finding that the licensees violated Rule 4.05(b) by

dispensing alcohol after hours. Furthermore, the court erroneously assumed that the licensees' argument regarding Rule 4.05(a) could be ignored if the evidence supported the guilty finding as to Rule 4.05(b). The licensees were cited for two separate violations. Accordingly, they were entitled to know of what they were found guilty. The licensees made clear to the court that they believed Rule 4.05(a) did not apply to private membership clubs and therefore could not be enforced against them. If the Board found the licensees guilty of violating Rule 4.05(a), and if the licensees continued to serve alcohol after hours and incurred a second guilty finding for that offense, the Board could, in accordance with the August 12, 1998 letter, impose the suspended penalty. In addition, in light of the previous offense, the Board might well impose a more severe sanction, such as revocation or suspension of the license, for the second guilty finding. *See* Code (1957, 1998 Repl.Vol., 1999 Cum.Supp.), § 10–401(a)(2) of art. 2B.

■ We therefore vacate the trial court's judgment and remand the case to that court with instructions to remand to the Board to set forth express findings of fact and conclusions of law. In doing so, we acknowledge that, while § 16–101(e)(4)(ii) of art. 2B has long authorized remand to several local licensing boards, it did not authorize remand to the Board of Liquor License Commissioners for Baltimore City until October 1, 1999, when 1999 Laws of Maryland, chapter 48 took effect. We reject the licensees argument that remand is inappropriate in this case because the amendment did not take effect until the instant appeal was pending.

■ The licensees contend that, in light of the insufficiency of the Board's findings, this Court has no choice but to reverse the case without remanding it. Their argument is premised on the general rule that "statutes are presumed to operate prospectively and are to be construed accordingly." *Washington Suburban Sanitary Comm'n v. Riverdale Heights Volunteer Fire Co., Inc.,* 308 Md. 556, 560, 520 A.2d 1319, 1321 (1987). "There is no absolute prohibition against retroactive application of a statute," however. *Holland v. Woodhaven*

*Bldg. & Dev., Inc.,* 113 Md.App. 274, 282–83, 687 A.2d 699, 704 (1996). In *Holland,* this Court observed:

The rules governing retroactivity ... are easy to state but difficult to apply. A number of Maryland cases can be cited for the general proposition that a statute is presumed to operate prospectively from its effective date absent a clear expression of legislative intent that the statute is to be applied retroactively. *Arundel Corp. v. County Comm'rs of Carroll County,* 323 Md. 504, 510, 594 A.2d 95 (1991); *Mason v. State,* 309 Md. 215, 219, 522 A.2d 1344 (1987); *WSSC v. Riverdale Heights Volunteer Fire Co.,* 308 Md. 556, 560–60 [*sic* ], 520 A.2d 1319 (1987) and cases discussed therein. Despite the presumption of prospectivity, a number of other cases support the proposition that when a legislative change in law affects only procedural matters, rather than substantive rights, it applies to all actions, whether accrued, pending, or future, unless a contrary intention is expressed. *Roth v. Dimensions,* 332 Md. 627, 636–38, 632 A.2d 1170 (1993); *Starfish Condo. Assoc. v. Yorkridge Serv. Corp., Inc.,* 295 Md. 693, 705, 458 A.2d 805 (1983); *Winston v. Winston,* 290 Md. 641, 649–50, 431 A.2d 1330 (1981); *Holmes v. Crim. Injuries Comp. Bd.,* 278 Md. 60, 63 n. 2, 359 A.2d 84 (1976); *Richardson v. Richardson,* 217 Md. 316, 320, 142 A.2d 550.

. . .

To complicate matters, [there is] another line of cases that hold that "an appellate court must apply the law in effect at the time a case is decided, provided that its application does not affect intervening vested rights." *O'Donnell v. Bassler,* 289 Md. 501, 508, 425 A.2d 1003 (1981) (citing *County Council for Prince George's County v. Carl M. Freeman Associates, Inc.,* 281 Md. 70, 76, 376 A.2d 860 (1977); *Rockville Fuel & Feed Co. v. City of Gaithersburg,* 266 Md. 117, 127, 291 A.2d 672 (1972)). *See also Yorkdale v. Powell,* 237 Md. 121, 124, 205 A.2d 269 (1964) (quoting *Woman's Club of Chevy Chase v. State Tax Comm'n,* 195 Md. 16, 19, 72 A.2d 742 (1950)). A countervailing principle

to that statement is that, absent legislative intent to the contrary, a change in procedural law will not be applied retroactively to undo proceedings that already have concluded prior to the passage of the law. *Luxmanor Citizens Assoc. v. Burkart,* 266 Md. 631, 645, 296 A.2d 403 (1972); *The Wharf v. Department,* 92 Md.App. 659, 675–76, 610 A.2d 314, *cert. denied,* 328 Md. 239, 614 A.2d 84 (1992).

113 Md.App. at 283–84, 687 A.2d at 704–05. We distilled from the case law the principles that,

> absent clear legislative intent to the contrary, (1) a statute ordinarily will be presumed to operate prospectively; (2) a statute that changes procedure ordinarily will be applied to pending cases; and (3) new procedural law, although applicable to pending cases, will not ordinarily be applied to undo procedures that already have concluded.

*Id.* at 287, 687 A.2d at 706.

In enacting 1999 Laws of Maryland, chapter 48, the Legislature did not specify whether the amendment allowing remand to the Board of Liquor License Commissioners for Baltimore City was to apply prospectively or retrospectively. While the licensees oppose retrospective application of the amendment, they concede that "the amendment is procedural in nature. . . ." The licensees offer no reason for this Court to decline to apply the exception allowing retrospective application of laws affecting purely procedural matters. We therefore conclude that the amendment is applicable.

In light of our disposition of the matter, we need not address the licensee's second and third arguments. Nevertheless, we shall do so in order to guide the trial court in the likely event that the Board will state with specificity that the licensees violated either Rule 4.05(a) or (b), or both, and the licensees will again seek judicial review.

## II

### After–Hours Consumption

The licensees assert that Rule 4.05(a) cannot properly be applied to them because the Windsor Club is a private mem-

bership club. The licensees argue that the Board's authority to regulate hours of consumption stems from § 11–305 of art. 2B, which provides, in pertinent part:

(a) *Applicability.*—This section applies only in Baltimore City.

(b) *In general.*—(1) Except as otherwise provided by law ..., between 2 a.m. and 6 a.m. on any day, a person may not consume any alcoholic beverages on any premises open to the general public, any place of public accommodation, or any place at which setups or other component parts of mixed alcoholic drinks are sold, whether or not the premises or place is licensed for the sale of alcoholic beverages or has any other license if any form of entertainment, live or recorded, is offered at the place or on the premises.[2]

. . .

(c) *Duty of owner, operator or manager generally.*—The owner, operator, or manager of the premises or place may not knowingly permit the consumption of alcoholic beverages that is prohibited by this section.

. . .

(e) *Penalties.*—Any person who consumes any alcoholic beverages on any premises enumerated in this section and

---

**2.** The licensees state in their brief that § 11–305(b) prohibits after-hours consumption on "1) premises open to the general public, 2) places of public accommodation, and 3) licensed or unlicensed premises where setups, etc. are sold and any form of entertainment is offered." We note that, in accordance with its punctuation, § 11–305(b) could also be read to prohibit after-hours consumption on: (1) any premises open to the general public; (2) any place of public accommodation, or (3) any place at which setups or other component parts or mixed alcoholic drinks are sold, whether or not the premises or place: (a) is licensed for the sale of alcoholic beverages, or (b) has any other license if any form of entertainment, live or recorded, is offered at the place or on the premises. Under this alternative construction, § 11–305(b) would prohibit the after-hours consumption at issue here, regardless of whether the Windsor Club is public or private. Unfortunately, a review of the legislative history of § 11–305(b) sheds no light on the proper interpretation of the statute. As the Board does not dispute the licensees' construction, we shall assume, without deciding, that it is correct.

any owner, operator, or manager of those premises or place who knowingly permits the consumption prohibited by this section is guilty of a misdemeanor and may be fined not more than $5,000 or imprisoned for not more than 3 years or both.

Code (1957, 1998 Repl.Vol.), § 11–305 of art. 2B.

The licensees point out that neither § 11–305(b) nor any other statute expressly prohibits the after-hours consumption of alcoholic beverages at private membership clubs. They argue that, without express statutory authority, the Board may not enact any rule or regulation, such as Rule 4.05(a), that prohibits such consumption. The licensees rely on *Board of Liquor License Comm'rs for Baltimore City v. Hollywood Productions, Inc.*, 344 Md. 2, 684 A.2d 837 (1996), where the Board responded to complaints of excessive noise and disorderly conduct outside a Baltimore City nightclub by ordering that the nightclub be closed from 7:00 on Sunday evenings until 6:00 Monday mornings. Like the Windsor Club, the nightclub operated under a Class B–D–7 license. Pursuant to § 8–203(d)(3) of art. 2B, Class B–D–7 "[l]icensees may sell all alcoholic beverages at retail at the place in the license described, for consumption on the premises and elsewhere, from 6 a.m. to 2 a.m. on the following day, 7 days per week." Code (1957, 1998 Repl.Vol.), § 8–203(d)(3) of art. 2B. Upon an appeal by the licensee, the trial court reversed the Board's order. The Court of Appeals affirmed, explaining that "the General Assembly's detailed regulation of the alcoholic beverages industry suggests that where it intends a liquor board to have a particular enforcement mechanism at its disposal, the General Assembly expressly provides for such mechanism by statute." 344 Md. at 16–17, 684 A.2d at 844. The Court concluded that, because the Board lacked either "explicit or implicit authority to sanction the licensee by restricting its hours of operation," the Board's order was improper. *Id.* at 17, 684 A.2d at 844.

Because the Board, in the instant case, has not exceeded the authority provided to it by statute, *Hollywood*

*Productions, Inc.* is inapposite. Although the Legislature has not enacted any statute expressly prohibiting the after-hours consumption of alcohol at private membership clubs, it has, with § 8–203(d)(3), set forth hours of operation for all establishments having Class B–D–7 licenses, whether private membership clubs or not. While § 8–203(d)(3) is couched in terms of when "[l]icensees may *sell* all alcoholic beverages," it is implicit that establishments having Class B–D–7 licenses may not remain open past the hours when sales are permitted. If licensees were permitted to allow patrons to remain on the premises after hours drinking alcohol—alcohol purchased just before 2:00 a.m., perhaps in a quantity calculated to last until 6:00—the requirement that sales and service terminate at 2:00 a.m. would serve no purpose. "[A] statute should not be construed in a way that would lead to absurd results, or consequences inconsistent with common sense." *Maryland Auto. Ins. Fund v. Sun Cab Co., Inc.,* 305 Md. 807, 813, 506 A.2d 641, 644 (1986).

 " '[W]here a statute is plainly susceptible of more than one meaning and thus contains an ambiguity,' " moreover, " 'courts consider not only the literal or usual meaning of the words, but their meaning and effect in light of the setting, the objectives, and the purpose of the enactment' " *Board of License Comm'rs for Charles County v. Toye,* 354 Md. 116, 123, 729 A.2d 407, 410–11 (1999) (citation omitted). Prior to the creation of Class B–D–7 licenses, the Board was authorized to issue five types of beer, wine, and liquor licenses:

Class A—package goods only, six days a week, no on-premises consumption, no Sunday sales.

Class B—restaurants serving a variety of hot and cold food, with package goods privileges, seven days a week, 6:00 a.m. to 2:00 a.m.

Class C—non-profit private clubs.

Class D—taverns, on- or off-premises consumption, six days a week, 6:00 a.m. to 1:00 a.m., no Sunday sales.

Special Amusement Licenses—a seven-day license issued only in conjunction with the Class D beer, wine and liquor

license to establishments furnishing live entertainment in form of singing, dancing, floor shows, etc.

76 Op. Att'y Gen. 25, 27 (1991). While there is "no documentation explaining the General Assembly's goal in enacting ... Chapter 197 of the Laws of Maryland 1965," which created Class B–D–7, it is accepted that the Legislature created the class of licenses "to achieve the limited purpose of allowing Class B licensees to scale back their food operations and yet continue to have a seven-day license." *Id.* at 29. From the start, Class B–D–7 licenses have entitled their holders to sell all types of alcoholic beverages from 6:00 a.m. to 2:00 a.m. the following day, seven days per week. *See* 1965 Laws of Maryland, chapter 197 (enacting former § 29A of art. 2B). In light of the purpose for creating Class B–D–7 licenses, it follows that, by specifying the hours for sales under the licenses, the Legislature intended to establish hours of operation in general. Section 11–303(b)(1) of art. 2B, which concerns hotels and restaurants operating under Class B licenses, provides: "The hours during which the privileges conferred by a Class B beer, wine and liquor license may be exercised are from 6 a.m. to 2 a.m. on the following day." It is beyond cavil that the privileges conferred by Class B licenses are the privileges to sell and to allow on-premise consumption. There is no reason to believe that the General Assembly intended to expand the hours during which those privileges could be exercised when it created Class B–D–7 licenses.

Under the circumstances, it was entirely proper for the Board to apply Rule 4.05(a) to the licensees in the instant case and thus to prohibit the licensees from allowing consumption of alcohol at the Windsor Club between 2:00 a.m. and 6:00 a.m. Section 8–203(d)(8) of art. 2B authorizes the Board to "adopt regulations to determine the manner of operation of an establishment that is operated under a Class B–D–7 ... license." That is precisely what the Board did by applying Rule 4.05(a) in the instant case.

Even assuming, *arguendo*, that the General Assembly did *not* intend, by its enactment of 1965 Laws of Maryland,

chapter 197, to limit the hours during which alcohol can be consumed at establishments having Class B–D–7 licenses, it does not follow that the Board cannot prohibit the licensees in the instant case from allowing such consumption. As the licensees acknowledge, § 11–305(b) prohibits, *inter alia,* after-hours consumption of alcohol "on any premises open to the general public" and any "place of public accommodation." While the license expressly states that the Windsor Club must be operated as a private membership club, the record does not reflect that that actually was being done.

■■■■■ The "critical factor" in determining whether a club is private is "whether the club's membership is truly selective." *Zanganeh v. Hymes,* 844 F.Supp. 1087, 1090 (D.Md. 1994) (where members of club at which nude dancing was featured had only to complete an application form and pay a yearly fee, and no one was denied membership, club was not "private" such that it was exempt from statute prohibiting consumption of alcohol in the presence of nude entertainers). There must be a " 'plan or purpose of exclusiveness.' " *Tillman v. Wheaton–Haven Recreation Ass'n, Inc.,* 410 U.S. 431, 438, 93 S.Ct. 1090, 1094, 35 L.Ed.2d 403 (1973) (citation omitted) (swimming pool that admitted all applicants who lived within three mile radius, provided membership was not full, was not private club and could not exclude black applicants). *See also Wright v. Salisbury Club, Ltd.,* 632 F.2d 309, 311–13 (4th Cir.1980) (country club that did not have selective membership and advertised for members was not private club and could not exclude black applicants). "[A]dmission to a club and its entertainment which is indiscriminately granted to any member of the public upon payment of the prescribed amount ... does not confer the status of a private club...." 14A C.J.S. *Clubs* § 2 at 609 (1991).

The licensees contend that, at the hearing before the Board, the Board conceded that the Windsor Club is a private club. They argue that, in light of the concession, they were not required to prove before the Board or the trial court that the club was truly private. In fact, the colloquy on which the

licensees rely does not establish that the Board conceded that the Windsor Club was a private club but only that the Windsor Club was authorized to operate as a private club. After all the evidence had been presented, two Board members discussed the matter as follows:

COMMISSIONER BROWN: Does this club, the Windsor Club, have approval of the Liquor Board to operate as a private club?

THE CHAIRMAN: Yes, ma'am. That's on the license.

No Board member commented at the hearing on whether the club was actually operating in accordance with the license provision, and the letter announcing the Board's decision did not address whether the Board believed the club was truly private.

At the hearing before the Board, the licensees presented no evidence regarding the Windsor Club's membership policies. Counsel for the licensees did inform the Board that most club members pay $500.00 to join for one year, then $250.00 a year thereafter to renew their memberships. Counsel indicated that the Windsor Club has corporate and "VIP" rates as well. At the hearing before the trial court, counsel was asked if anyone "could just go in and sign up and become a member." Counsel responded vaguely: "With [the] corporation's approval." Under the circumstances, the Board could properly determine that the Windsor Club was not truly private.

## III

### After–Hours Sales

■ Finally, the licensees contend that, assuming, *arguendo,* that the Board found them guilty of violating Rule 4.05(b) by allowing sales to occur after hours, the finding was not supported by the record.

To the contrary, Blackburn himself testified that he walked out of his office in the Windsor Club at about 2:30 a.m. on May 24, 1998 and, to his surprise, found 20 to 25 people on the premises. Blackburn stated that he told the bartender to

"[l]eave the bar" and start "clearing people out," thus implying that the bartender was behind the bar at the time. Blackburn indicated that the bartender was "new" and is "no longer employed" at the Windsor Club. A police officer testified that, when she entered the premises at 3:15 a.m., she saw several people drinking alcohol.[3] Some were drinking from glasses and some from bottles of beer.

As explained *supra*, a reviewing court must accept the Board's findings of fact if they are supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bulluck v. Pelham Wood Apartments,* 283 Md. 505, 512, 390 A.2d 1119, 1123 (1978) (citation omitted). That is, the court must affirm if "a reasoning mind reasonably could have reached the factual conclusion the agency reached." *Patten,* 107 Md.App. at 230, 667 A.2d at 943 (emphasis omitted). There was evidence before the Board that people were drinking alcohol at the Windsor Club at 3:15 a.m., one hour and fifteen minutes after closing time. Moreover, Blackburn's own testimony suggested that the bartender was behind the bar serving customers as late as 2:30 a.m. We are satisfied that a reasonable mind reasonably could have concluded that those persons consuming alcohol at 3:15 a.m. had not been consuming the same drinks since sometime before 2:00 a.m., but rather had been served the drinks after hours.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY VACATED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND TO THE BOARD OF LIQUOR LICENSE COMMISSIONERS FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. APPELLEE TO PAY THE COSTS.

---

**3.** The police officer testified that although several patrons were drinking alcohol she issued a citation to only one patron.