692 A.2d 1

**Rose HOYLE, et al.**

v.

**BOARD OF LIQUOR LICENSE COMMISSIONERS FOR BALTIMORE CITY**

No. 1233, Sept. Term, 1996.

Court of Special Appeals of Maryland.

April 3, 1997.

Benjamin Lipsitz, Baltimore, for Appellants.

Deborah B. Bacharach, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Gerald Langbaum, Asst. Atty. Gen, on the brief), Balitmore, for Appellee.

Argued before DAVIS, HOLLANDER and SONNER, JJ.

DAVIS, Judge.

Rose Hoyle, Ruth Miller, Robert L. Sharp and/or Brother's Place, Inc., trading as Martini's Bar, 1846–50 West Pratt Street, Baltimore (appellants) filed a petition for judicial review in the Circuit Court for Baltimore City on February 23, 1996, seeking the reversal of the January 25, 1996 decision of the Board of Liquor License Commissioners for Baltimore City (the Board). The Board had ruled that appellants had violated Board RULE 4.01(a), which prohibits the sale of alcoholic beverages to a minor. The Board assessed a $500 penalty, granting appellants the option to close the offending establishment for five days in lieu of the fine. On June 13, 1996, after a hearing, the circuit court affirmed the decision of the Board. We restate appellants' questions for review as follows:

I. Did the Board interpret RULE 4.01(a) as imposing strict liability upon any licensee who sells alcohol to a minor under the age of twenty-one?

II. Does RULE 4.01(a) incorporate a defense of "due caution?"

III. Was the Board's decision arbitrary, capricious, or otherwise illegal?

We answer the first question in the affirmative and the second and third questions in the negative. We affirm the circuit court.

## FACTS

On August 30, 1995, Baltimore City Police Officer James O'Donnell and Police Cadet Mark Holden were assigned to visit as many establishments as possible to determine if alcoholic beverages would be sold to an underage person. As an eighteen-year-old Cadet, Holden was the "mole" of the operation. Plainclothed, Holden entered Martini's Bar while O'Donnell waited outside. Martini's Bar has two entrances. Holden initially entered by the front entrance, where the bar was located and packaged goods were sold. He attempted to purchase alcohol, but was asked for identification by the store

clerk, Barbara Nail. Holden then turned and left the way he had come in, reporting to O'Donnell what had just happened.

As they walked down the street, O'Donnell and Holden passed the second entrance to the establishment. This entrance led to a part of the establishment that sold crabs and alcohol, known as Martini's Crab House. Testimony during the Board hearing indicated that the Crab House was separate from the bar. O'Donnell instructed Holden to enter the establishment through the Crab House entrance.

Inside the Crab House, Holden attempted to purchase beer. Dennis Brown, an employee of Martini's, testified that Holden asked Patricia Younkis, another employee, for a six-pack of Coors Light. According to Brown, Holden looked "exactly like" a patron of the Crab House who came in regularly on Wednesday evenings, the same night as the night in question. The store had asked this regular patron for his identification before and, finding him of legal age, did not ask him for identification any more. Brown testified that he mistook Holden for this patron and instructed Younkis to give Holden the beer he requested. She did, and Holden paid for the beer with departmental funds and left.[1] Immediately after, Holden and O'Donnell went into the side entrance of Martini's Bar (Crab House) and told the manager and Younkis that the establishment had violated the rules of the Liquor Board and that the Board would be notified.

Appellants requested a hearing when notified of the violation. By letter dated October 30, 1995, appellant Miller, one of the licensees, advised the Board of appellants' intent to call as a witness the customer who allegedly resembled Holden. Because the customer was a student, Miller wrote, appellants would probably next see him during the coming Christmas vacation. Miller requested that the Board schedule a hearing no earlier than the last week of December 1995. The Board

---

1. Younkis testified to the same effect as Brown, asserting that Holden appeared identical to a college student who came in regularly between eight and nine o'clock on Wednesday evenings for beer and crabs.

granted the request by scheduling the hearing for January 25, 1996.

At the hearing, the establishment was represented by Marvin Miller, the husband of Ruth Miller. Marvin Miller was neither an attorney nor a licensee. He stated that he was the manager of the establishment. None of the licensees attended the Board hearing. Appellants' principal defense at the Board hearing was, as detailed *supra*, that both Brown and Younkis mistook Holden for a regular customer whom they knew to be of legal drinking age. At the conclusion of the testimony, the Board issued an oral decision that we reproduce here *verbatim:*

> For the record, the Board has heard testimony with respect to a violation of the Board's Rule 4.01(a), that is in effect serving a minor, that is someone under 21 years of age. In this instance the minor is a police cadet; at the time of being served he was 18 years of age. And he was served at Brothers Place, Inc. trading as Martini's Bar, located at 1846–50 West Pratt Street.
>
> The preponderance of the testimony, Mr. Miller, is that in fact an 18-year old was served; regardless of the circumstances in which he was served he was served, which is a violation. Therefore, we're going to assess a penalty of $500 to be paid not later than February 1, which is next Thursday. If you should like to close your place down, your place of business down for five days you may do that effective February 2nd of 1996. You may let Mr. Stansbury or the office know what position you will take in this matter.

The circuit court found that the Board's decision was supported by substantial evidence and issued an order affirming it.

### STANDARD OF REVIEW

Judicial review of agency action is narrow. *United Parcel Service v. People's Counsel for Baltimore County,* 336 Md. 569, 576, 650 A.2d 226 (1994). A reviewing court must examine whether the agency's factual conclusions were reason-

able; "this need not and must not be either judicial fact-finding or a substitution of judicial judgment for agency judgment." *Board of County Comm'rs v. Holbrook,* 314 Md. 210, 218, 550 A.2d 664 (1988) (quoted source omitted). *See also Younkers v. Prince George's County,* 333 Md. 14, 18, 633 A.2d 861 (1993); *Bulluck v. Pelham Wood Apts.,* 283 Md. 505, 513, 390 A.2d 1119 (1978). An agency conclusion will not be upheld upon review, however, if based upon an error of law. *See Ad + Soil, Inc. v. County Comm'rs of Queen Anne's County,* 307 Md. 307, 338, 513 A.2d 893 (1986). Thus, a reviewing court must pass on both the legality of the decision and whether there was "substantial evidence" in the record to support the decision. *Baltimore Lutheran High School Ass'n v. Employment Sec. Admin.,* 302 Md. 649, 662, 490 A.2d 701 (1985).

An appellate court may scour the record for evidence to support a trial court's judgment, and may sustain that judgment for a reason plainly appearing on the record, even if the trial court did not rely on that reason. *Umerley v. People's Counsel of Baltimore County,* 108 Md.App. 497, 504, 672 A.2d 173, *cert. denied,* 342 Md. 584, 678 A.2d 1049 (1996). We may only uphold the decision of an agency, however, if the decision is "sustainable on the agency's findings and for the reasons stated by the agency." *United Steelworkers of America, Local 2610 v. Bethlehem Steel Corp.,* 298 Md. 665, 679, 472 A.2d 62 (1984); *Baines v. Board of Liquor License Comm'rs,* 100 Md.App. 136, 143, 640 A.2d 232 (1994).

## ANALYSIS

The only analysis apparent in the Board's decision was the following sentence:

The preponderance of the testimony, Mr. Miller, is that in fact an 18–year old was served; regardless of the circumstances in which he was served he was served, which is a violation.

We agree with appellants that, given the testimony elicited at the Board hearing and given the tremendous reliance placed

by appellants on an alleged misidentification of Holden by Brown and Younkis, the "circumstances" to which the Board alluded in its decision were the circumstances alleged by appellants—that Brown and Younkis mistook Holden for a customer whom they knew to be of legal drinking age. Too much time and discussion during the hearing concerned this allegation for us to conclude otherwise. With the statement quoted *supra,* the Board described the law as it believed it to be—serving alcohol to a minor is a strict liability offense and is not excused by misidentifying the minor for another customer who is of legal drinking age. We must examine whether the Board correctly stated the law; if it did not, we must vacate the decision and remand the case to the Board for a correct application of the controlling legal principles. *See Ad + Soil, Inc.,* 307 Md. at 338, 513 A.2d 893.

█ The rule that the Board interpreted was RULE 4.01(a) of the RULES AND REGULATIONS OF THE BOARD OF LIQUOR LICENSE COMMISSIONERS FOR BALTIMORE CITY. That provision states:

(a) No licensee shall sell or furnish alcoholic beverages to any person under twenty-one (21) years of age or to any person with the knowledge that such person is purchasing or acquiring such beverages for consumption by any person under twenty-one (21) years of age.

A plain reading of the rule makes clear that the knowledge requirement contained within it is meant to encompass those situations when a patron of legal drinking age attempts to purchase alcohol for a minor's consumption. The prohibition of sales to anyone under the age of twenty-one stands alone, unmodified by express terms. There is no express provision within the rule that allows a defense of "due caution." Appellants have provided us with no legislative history or other information from which we may divine the intent of the Board; moreover, the Board's own interpretation of the rule is that it is one of strict liability. Thus, we conclude that the intent of the Board was to make those licensees who furnish alcoholic beverages to anyone under the age of twenty-one strictly liable for the offense. *See Klingenberg v. Klingenberg,* 342 Md. 315, 328, 675 A.2d 551 (1996) (stating that in the absence

of "illuminating legislative history ... we are left with the plain language of the statute").

Appellants argue, nevertheless, that we should read a "due caution" provision into the rule. Appellants cite *Haskin v. State*, 213 Md. 127, 131 A.2d 282 (1957), and *Cicero v. State*, 200 Md. 614, 92 A.2d 567 (1952), for the proposition that the criminal statute involved in these cases, which provided a defense of "due caution," is analogous to the administrative rule at issue in the case *sub judice*. Thus, conclude appellants, we should read the same defense of "due caution" into the administrative corollary.

We disagree. MARYLAND ANNOTATED CODE art. 2B, § 12–108(a) (1957, 1996 Repl.Vol.), states, in pertinent part:

> (a) *Generally.*—(1) A licensee licensed under this article, or any employee of the licensee, may not sell or furnish any alcoholic beverages at any time to a person under 21 years of age:
>
> (i) For the underage person's own use or for the use of any other person....

Those accused under this statute may avail themselves of the following defense:

> (ii) A licensee or employee of the licensee who is charged with selling or furnishing any alcoholic beverages to a person under 21 years of age may not be found guilty of a violation of this subsection, if the person establishes to the satisfaction of the jury or the court sitting as a jury that the person used due caution to establish that the person under 21 years of age was not, in fact, a person under 21 years of age *if a nonresident of the State.*

§ 12–108(a)(3)(ii) (emphasis added). If the person is a resident of Maryland, then the licensee or employee may accept, as proof of that person's age, a driver's license or identification card. § 12–108(a)(3)(iii). A violation of this statute is a criminal misdemeanor. § 12–108(a)(3)(i). With certain exceptions, an acquittal awards immunity from any proceeding by a licensing authority on account of the same violation. § 12–108(a)(3)(iv).

■ Appellants' argument fails to persuade us that RULE 4.01(a) carries within it an implied defense of "due caution." First, even if we were to analogize the rule to art. 2B, § 12–108(a)—which we do not—appellants still could not avail themselves of a "due caution" defense. When *Cicero* and *Haskin* were decided, the predecessor of § 12–108(a) provided the defense of "due caution" to any person charged with furnishing alcohol to any minor under twenty-one years of age, regardless of the minor's place of residence. *Cicero,* 200 Md. at 616, 92 A.2d 567. Under the current version of § 12–108(a), this broad defense is available to a defendant only if the purchaser is a nonresident of the State. § 12–108(a)(3)(ii). The record does not disclose whether Holden resides in Maryland; we think it reasonable to assume that, as a Baltimore City Police Cadet, he resides in the City or nearby.[2] If the customer is a resident of Maryland, § 12–108(a)(3)(iii) provides a *per se* defense to any licensee or employee who accepts a driver's license or identification card as provided in the Maryland Vehicle Law. The statutory language, then, explicitly limits the "due caution" defense to licensees or employees selling to nonresidents of Maryland, substituting a *per se* defense—and excluding a "due caution" defense—for those who sell to residents of Maryland.[3] Thus, *Cicero* and *Haskin* are inapposite.

More important, neither Younkis nor Brown asked for Holden's driver's license or identification card; under § 12–

---

**2.** Appellants carry the burden of persuasion that the trial court erred in its ruling. *Bailey v. State,* 84 Md.App. 323, 333, 579 A.2d 774 (1990). A part of this burden is the making of an adequate record. *Id.*

**3.** Article 2B, § 12–109 establishes a *prima facie* presumption of innocence and a defense to prosecution if a licensee records certain information about a customer in a prescribed manner before furnishing alcoholic beverages to the customer, if the customer provided documentary proof of legal age, if it would appear to an ordinary and prudent person that the purchaser was of legal drinking age, and if the licensee relied in good faith upon the documentary evidence, the representation by the customer, and the customer's appearance. *Id.* This section has no relevance here, as appellants' employees did not establish the necessary elements.

108(a)(3)(iii), they may not claim that they exercised "due caution" when they sold the beer to Holden. The statute imposes strict liability for the sale on the licensees. Thus, Rule 4.01(a) does not conflict with a State ordinance, and is valid. *See Coalition for Open Doors v. Annapolis Lodge No. 622*, 333 Md. 359, 371, 635 A.2d 412 (1994) (local government ordinance that conflicts with a public general law enacted by the General Assembly is preempted and invalid). Rule 4.01(a) is a valid rule adopted under art. 2B § 16–301(a), which specifies:

> In addition to the powers otherwise provided by this article, the Comptroller and the board of license commissioners from any county or Baltimore City, respectively, have full power and authority to adopt such reasonable rules and regulations as they may deem necessary to enable them effectively to discharge the duties imposed upon them by this article.

The Board's decision was supported by substantial evidence in the record. The evidence established that Holden entered Martini's Bar and bought beer without being asked for identification. This was a violation of Rule 4.01(a), as the Board properly found. *See Baltimore Lutheran High School Ass'n*, 302 Md. at 661–662, 490 A.2d 701. In light of our holding, appellants' other claims of bias and arbitrariness are moot.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANTS.**