Argued and submitted August 19, 2011, affirmed May 9, 2012

DK ENTERTAINMENT, LLC;
and David Kiraz, Managing Member,
dba Cabaret Lounge,
*Petitioners,*

*v.*

OREGON LIQUOR CONTROL COMMISSION,
*Respondent.*

Oregon Liquor Control Commission
OLCC08V061, OLCC08V064, OLCC08V097,
OLCC08V061A, OLCC08V064A, OLCC08V097A;
A143690

278 P3d 112

Duke Tufty argued the cause for petitioners. With him on the briefs were Eric L. Dahlin and Davis Wright Tremaine LLP.

Leigh A. Salmon, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and David B. Thompson, Interim Solicitor General.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

ARMSTRONG, P. J.

## ARMSTRONG, P. J.

Petitioners DK Entertainment, LLC, and David Kiraz, its managing member, (collectively, "licensee") seek review of a final order of the Oregon Liquor Control Commission (OLCC) that cancelled licensee's license to sell alcoholic beverages, raising three assignments of error. We write to address only one of licensee's assignments,[1] *viz.*, that the OLCC erred in concluding that licensee permitted unlawful activity on its premises when one of licensee's dancers and one of its patrons allegedly engaged in an act of prostitution and, consequently, that licensee, through the actions of the dancer, had violated OAR 845-006-0347(3)(a).[2] We disagree with licensee and, accordingly, affirm.

We take the pertinent facts, which are undisputed, from the OLCC's final order and the record supporting the order. Licensee owns the Cabaret Lounge in downtown Portland and holds a license to sell alcohol there. A patron of the Cabaret Lounge paid one of licensee's dancers for a private erotic dance, during which the patron performed consensual oral sex on her. One of licensee's managers and another dancer both witnessed the sexual contact, and, after the dancer performing the dance had finished and collected the money from the patron, the manager removed the patron from the premises and told the dancer to leave because her dance had violated licensee's policy against sexual contact with patrons.[3]

Once outside, the patron waved down Portland Police Officer Schmautz and complained to him about having been physically removed from the club. Schmautz investigated the complaint, and, in the course of the investigation, the patron admitted to paying the dancer for a dance that included sexual contact and the dancer admitted to accepting

---

[1] We reject licensee's other assignments of error without discussion.

[2] OAR 845-006-0347(3)(a) provides:

"No licensee or permittee will permit any unlawful activity on the licensed premises or in areas the licensee controls that are adjacent to or outside the premises. Unlawful activity includes any activity that violates a criminal statute. Examples include, but are not limited to, crimes related to prostitution, public indecency, controlled substances and gambling. The [OLCC] does not require a conviction to establish a violation of this section except as ORS 471.315 and 471.700 requires."

[3] The dancer was eventually fired as a result of the incident.

his payment and allowing him to perform oral sex on her. Schmautz charged the dancer and the patron with prostitution—charges that were eventually dismissed.

After investigating the incident, the OLCC charged licensee with violating OAR 845-006-0347(3)(a) by permitting unlawful activity on the licensed premises when its dancer engaged in an act of prostitution. The OLCC consolidated that alleged violation with several others and proposed that, as a result of the all of the violations, licensee's license to serve alcohol be cancelled. The administrative law judge (ALJ) in licensee's ensuing contested case proceeding issued a proposed order that concluded that licensee had committed all of the alleged violations and that cancellation of the license was warranted.

Shortly thereafter, the OLCC issued a final order that was consistent with the ALJ's proposed order, including the cancellation penalty. Specifically, as to the violation of OAR 845-006-0347(3)(a), the OLCC concluded that licensee had violated the rule, reasoning as follows: (1) To prove that licensee permitted unlawful activity, the evidence in the case had to satisfy two elements, *viz.*, that licensee knew of the unlawful activity and failed to take reasonable steps to prevent or control it. (2) Under OAR 845-006-0362,[4] the knowledge and conduct of a servant, agent, or employee of a licensee may be imputed to the licensee to determine whether the licensee had the requisite knowledge and failed to take reasonable preventive action. (3) Therefore, because the evidence established that the dancer had engaged in an act of prostitution while working for licensee at the licensed premises, her knowledge of and failure to prevent her own unlawful activity was properly imputed to licensee, and, hence, licensee permitted the act of prostitution.[5]

---

[4] OAR 845-006-0362 provides:

"Each licensee may be held responsible for violation of any liquor control law or administrative rule or regulation of the [OLCC] affecting his license privileges and for any act or omission of his servant, agent, employee, or representative in violation of any law, municipal ordinance, administrative rule, or regulation affecting his license privileges."

[5] The OLCC also rejected licensee's argument that the dancer was an independent contractor and, therefore, her knowledge and conduct could not be imputed to licensee under OAR 845-006-0362. Licensee has not challenged that conclusion on judicial review of the OLCC's final order, and, for that reason, we do not address it.

On judicial review, licensee argues, among other things, that the OLCC's analysis, in which the agency attributed licensee's dancer's unlawful conduct to licensee to establish that licensee knew of the conduct and failed to take reasonable steps to prevent it, is not consistent with earlier OLCC decisions, and, therefore, under ORS 183.482(8)(b),[6] the OLCC must explain the inconsistency. As explained below, licensee's premise that the OLCC acted inconsistently with its precedent is flawed.

In *Don Juan's*, OLCC Final Order OLCC-88-V-003 (1988), the OLCC charged the licensee with violating a precursor rule that is equivalent to OAR 845-006-0347(3)(a) based on the actions of an on-duty bartender at Don Juan's who had delivered cocaine in the bar's parking lot to an undercover police officer. After setting out the two elements that had to be proved to establish that a licensee had permitted proscribed activity on the premises—*viz.*, knowledge and failure to take reasonable preventive action—the OLCC explained the application of those elements when an on-duty employee is the person who has engaged in the proscribed activity.

As to the knowledge element, the OLCC recognized that, under its precedent and rules, it "may impute to the licensee the knowledge of the licensee's employees." *Id.* at 6. Therefore, notwithstanding the licensee's lack of actual knowledge of the cocaine sale, the bartender's participation in the sale proved that the bartender knew of the criminal activity, which the OLCC imputed to the licensee. *Id.* at 7. As to the licensee's failure to take reasonable steps to prevent the criminal activity, the OLCC explained that, under its precedent and rules, a "licensee is responsible where the licensee's employees fail to take such steps." *Id.* Because the bartender participated in the cocaine sale—and, therefore, *by definition* had not taken reasonable steps to prevent it—the OLCC concluded that the agency had established that element as to the licensee.[7] Accordingly, the OLCC concluded

---

[6] ORS 183.482(8)(b) provides, as relevant, that a court shall remand a final order to the issuing agency if the order is "[i]nconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency."

[7] The OLCC also explained that the fact that the bartender had violated the licensee's prohibition against drug sales on the premises was not a defense to the charged violation.

that the licensee had permitted proscribed activity on its premises.

More recently, in *Jiffy Mart*, OLCC Final Order OLCC-04-V-027 (2005), the OLCC charged the licensee with violating OAR 845-006-0347(3)(a) because an on-duty cashier at Jiffy Mart had sold marijuana in the store to an informant for the Tillamook County Drug Task Force. After recounting that the OLCC may impute a licensee's employee's knowledge to the licensee in determining whether the licensee permitted unlawful activity on its premises, the OLCC synthesized the principle running through its prior decisions regarding a licensee's failure to take reasonable preventive steps when an employee is the person who has engaged in the proscribed activity—*viz.*, the OLCC "need not consider whether the wrongdoer took steps to prevent [his or her] own wrongful act." *Id.* at 6. In other words, the fact that a licensee's employee engaged in the unlawful activity is sufficient to prove that the licensee failed to take reasonable steps to prevent the unlawful activity. Accordingly, the OLCC concluded that the agency had proved that the licensee had permitted unlawful activity on its premises.

Notwithstanding the consistency of those two decisions, licensee contends that other OLCC decisions have applied an analysis that conflicts with the analysis in *Don Juan's* and *Jiffy Mart*. We conclude that none of those decisions conflicts with *Don Juan's* and *Jiffy Mart*.

For example, licensee argues that *Interstate Bar & Grill*, OLCC Final Order OLCC-09-V-027 (2009), is a conflicting decision. The OLCC charged the licensee in *Interstate Bar & Grill* with permitting unlawful activity on its premises because one of the licensee's security personnel had provided security services without the required certification to do so. In February 2008, 10 months before the incident involving the licensee's employee, an OLCC inspector had contacted the licensee to discuss whether all of the licensee's security personnel were properly certified. The licensee subsequently left a voice message with the inspector indicating that not all of the personnel were certified but that the licensee would promptly correct that.

In its final order, the OLCC laid out the operative principles consistently with those stated in *Don Juan's* and

*Jiffy Mart.* However, the OLCC then went on to analyze whether *the licensee* had known of the unlawful activity *in* February 2008 and had taken reasonable steps to prevent noncertified security personnel from providing security services at the bar *after* February 2008, concluding that the licensee had had the requisite knowledge in February 2008 and had failed to take reasonable preventive steps thereafter.

Licensee focuses on that aspect of the analysis, arguing that, under a consistent application of the principles in *Don Juan's* and *Jiffy Mart*, the OLCC in *Interstate Bar & Grill* should not have had to analyze whether *the licensee* had taken reasonable preventive steps because the licensee's on-duty employee was the wrongdoer. According to licensee's premise, if the OLCC were acting in *Interstate Bar & Grill* consistently with its earlier decisions, then it would simply have imputed the licensee's employee's knowledge and conduct to the licensee. Licensee, however, mistakes the OLCC's choice in *Interstate Bar & Grill* to focus on the licensee with an inconsistent application of the agency's precedent.

The facts in *Interstate Bar & Grill* markedly differed from those in other OLCC decisions involving violations of OAR 845-006-0347(3)(a). In *Interstate Bar & Grill*, the licensee recognized that there were noncertified security personnel working on the premises 10 months before the OLCC learned of a specific instance of that proscribed activity. Based on the evidence proving that the licensee had permitted unlawful activity on the premises in February 2008, the OLCC did not have to impute the employee's knowledge and conduct to the licensee to prove the violation. And, given the permissive wording of OAR 845-006-0362—*i.e.*, "[e]ach licensee *may* be held responsible" for its employees' actions (emphasis added)—the OLCC was free to rely in that situation on the licensee's knowledge and actions rather than those of the licensee's employee. Further, and most importantly, the OLCC contended that the licensee should receive a *greater penalty* based on the aggravating factor that the licensee had allowed the employee to work without certification—and thus violated OAR 845-006-0347(3)(a)—roughly 10 months *after* the licensee had become aware that its employees needed to be certified. Therefore, contrary to licensee's argument, the OLCC's choice in *Interstate Bar &*

*Grill* to focus on the licensee's knowledge and conduct is not inconsistent with its decisions in *Don Juan's* and *Jiffy Mart*. Licensee's proffered inconsistencies in another OLCC decision are similarly unavailing.[8]

Accordingly, we conclude that the OLCC did not apply in this case an understanding of the term "permit" in OAR 845-006-0347(3)(a) that is inconsistent with its application of the term in prior cases in which a licensee's on-duty employee has engaged in proscribed activity on licensed premises.

Affirmed.

---

[8] Specifically, licensee also calls into question the OLCC's analysis in *Casa Del Rio*, OLCC Final Order, OLCC-88-V-033 (1988).