**HEADNOTE:** *Steven Kougl, et al. v. The Board of Liquor License Commissioners for Baltimore City*, No. 935, Sept. Term, 2015.

**ADMINISTRATIVE LAW - RULES OF THE BOARD OF LIQUOR LICENSE COMMISSIONERS - USE OF TERMS "SUFFER," "PERMIT," OR "ALLOW" DOES NOT IMPOSE STRICT LIABILITY ON LICENSEES - PROOF OF KNOWLEDGE REQUIRED**

**Facts:** Appellant, Steven Kougl, owns Club Harem, a Baltimore tavern and adult entertainment business, and holds a liquor license for that location issued by appellee, the Board of Liquor License Commissioners for Baltimore City ("the Liquor Board"). The Liquor Board charged Kougl with violating three Liquor Board Rules related to solicitation of prostitution, indecent exposure, and violation of public morals, all occurring at Club Harem, when an employee exposed herself to an undercover police officer and then solicited sexual intercourse from the same officer. The Liquor Board found Kougl guilty of all three violations and ordered that his liquor license be suspended for one month. Kougl filed for judicial review in the Circuit Court for Baltimore City, which affirmed the decision of the Liquor Board.

**Held:** Reversed and remanded.

The Liquor Board found that Kougl violated (1) Rule 4.17(a), which provides that no licensee shall "permit or suffer any employee . . . to solicit any person for prostitution," (2) Rule 4.17(b), which provides that "[n]o licensee shall permit or suffer any person to appear in any act or other performance with breasts or the lower torso uncovered," and (3) Rule 4.18, which provides that "[n]o licensee shall commit or allow the commission on his premises of any act which shall be . . . against the public . . . morals." The Liquor Board interpreted these Rules to impose a strict liability standard on licensees.

The Court of Special Appeals held that the Liquor Board erred in interpreting the words "suffer," "permit," and "allow" in Rules 4.17 and 4.18 to impose a strict liability standard on licensees, because the plain meaning of the subject terms necessarily requires that some level of knowledge by the licensee must be established by the evidence.

The Court also held that the knowledge requirement implicit in the terms "suffer," "permit," and "allow" can be satisfied by proof of either actual or constructive knowledge on the part of the licensee. Actual knowledge is actual awareness of the prohibited activity, as well as "deliberate ignorance" or "willful blindness." Constructive knowledge, however, implies knowledge where a licensee should have known of the prohibited activity if reasonable care and diligence had been exercised. Here, there simply was no evidence of Kougl's actual or constructive knowledge of the violations.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 935

September Term, 2015

STEVEN KOUGL, ET AL.

v.

THE BOARD OF LIQUOR LICENSE
COMMISSIONERS FOR BALTIMORE CITY

Woodward,
Graeff,
Arthur,

JJ.

Opinion by Woodward, J.

Filed: June 2, 2016

The eagle suffers little birds to sing,
And is not careful what they mean thereby,
Knowing that with the shadow of his wings
He can at pleasure stint their melody[.]

—Tamora, *Titus Andronicus*, Act 4, Scene 4 (W. Shakespeare)

In the instant case, we are called upon to decipher the meaning of the word "suffer," and its analogs, "permit" and "allow." Specifically, we must decide whether these terms, when used in rules governing the conduct of holders of a liquor license in Baltimore City, require proof of knowledge on the part of such licensees.

Appellant, Steven Kougl, owns Club Harem, a Baltimore tavern and adult entertainment business, and holds a liquor license for that location issued by appellee, the Board of Liquor License Commissioners for Baltimore City ("the Liquor Board"). On July 2, 2014, the Liquor Board charged Kougl with violating three Liquor Board Rules related to solicitation of prostitution, indecent exposure, and violation of public morals, all occurring on April 25, 2013, at Club Harem, when an employee exposed herself to an undercover police officer and then solicited sexual intercourse from the same officer. The Liquor Board found Kougl guilty of all three violations and ordered that his liquor license be suspended for one month. Kougl filed for judicial review in the Circuit Court for Baltimore City, which affirmed the decision of the Liquor Board.

On appeal to this Court, Kougl raises four questions for our review, which we have condensed and rephrased as two questions:[1]

_____

[1] Kougl's questions, as presented in his brief, are as follows:

(continued...)

1.	Did the Liquor Board make sufficient findings of fact in support of the three charged violations of the Liquor Board Rules?

2.	Did the Liquor Board err in concluding that Kougl was guilty of the three violations even though there was no evidence that Kougl had knowledge of his employee's behavior?

For reasons set forth herein, we answer both questions in the affirmative, and thus reverse the judgment of the circuit court and remand the case to that court for entry of a judgment reversing the decision of the Liquor Board.

## BACKGROUND

On April 25, 2013, Detective Fletcher Jackson, a Baltimore City police officer assigned to the Special Enforcement Section, entered Club Harem in plain clothes to conduct a prostitution investigation. Jamaica Brickhouse, a woman who worked at Club Harem, approached Det. Jackson at the bar and asked if she could join him. Det. Jackson said "sure," and bought Brickhouse a drink. After some initial conversation, Brickhouse exposed her

[1](...continued)
1.	Did the Liquor Board make sufficient findings of fact and conclusions of law to allow for meaningful judicial review?

2.	Did the Liquor Board err in finding the licensee guilty of violating Liquor Board Rule 4.17(a)?

3.	Did the Liquor Board err in finding the licensee guilty of violating Liquor Board Rule 4.17(b)?

4.	Did the Liquor Board err in finding the licensee guilty of violating Liquor Board Rule 4.18?

2

breasts to Det. Jackson. Brickhouse invited Det. Jackson to touch her breasts, which he did. Brickhouse then suggested a lap dance or a trip to "the VIP," where they could "do whatever up there." Det. Jackson asked how much it would cost him to have sex with Brickhouse; Brickhouse replied that it would cost $170 "for the room," plus a tip for her services. Det. Jackson said that he could tip $100, and Brickhouse agreed. Brickhouse returned to the stage to perform, and Det. Jackson notified other officers. Brickhouse, however, was not issued a criminal summons until December 10, 2013, almost eight months later.[2]

Fifteen months after the incident, on July 2, 2014, the Liquor Board charged Kougl with violating three Liquor Board Rules related to solicitation of prostitution in violation of Rule 4.17(a), indecent exposure in violation of Rule 4.17(b), and violation of public morals in violation of Rule 4.18. On July 17, 2014, the Liquor Board held a hearing on the charges against Kougl. Det. Jackson was the only witness for the prosecution; Kougl testified in his own defense. The Liquor Board voted 2-1 that Kougl was guilty of the three violations[3] and suspended his liquor license for one month.

On July 18, 2014, Kougl filed a Petition for Judicial Review in the circuit court. On March 2, 2015, Kougl filed his Memorandum, in which he argued that (1) the Liquor Board's decision was not based on substantial evidence, because "[t]here [wa]s nothing in [Det.

---

[2] These charges were nolle prossed by the State on January 6, 2014.

[3] As set forth *infra*, the dissenting Commissioner found that the evidence did not support the charges, because "there was a lapse of eight months. And I think that is extraordinary. It is unusual and it is not acceptable practice."

Jackson's] testimony to indicate that the [l]icensee knew, allowed or permitted this type of activity, which is needed to sustain the violations"; (2) its decision was unreasonable and arbitrary, because the Chairman of the Liquor Board stated that a licensee "would be responsible for actions of an employee" regardless of "whether the [l]icensee knew or did not know or allowed or did not allow or permitted or did not permit" the prohibited activity; and (3) the Liquor Board failed to make specific findings of fact and conclusions of law as required. On April 15, 2015, the Liquor Board filed its Response to Kougl's Memorandum, in which it contended that (1) its decision was based on substantial evidence; (2) its decision was reasonable; and (3) the Liquor Board made sufficient findings of fact and conclusions of law.

On May 22, 2015, the circuit court held oral argument and issued an oral ruling affirming the decision of the Liquor Board. On May 28, 2015, the court entered its order affirming the Liquor Board's decision. On June 22, 2015, Kougl filed a timely notice of appeal.

## STANDARD OF REVIEW

Maryland law provides by statute that the action of a local liquor board is presumed to be proper and places the burden of proof upon the licensee to show that the decision complained of was arbitrary, fraudulent, unsupported by substantial evidence, illegal, or against the public interest. Md. Code (1957, 2011 Repl. Vol), Art. 2B, § 16-101(e)(1)(i). This Court has explained appellate review of a Liquor Board's decision as follows:

4

While the last sentence of § 16-101(e)(1)(i) expressly permits the trial court, under certain circumstances, to hear additional evidence, the court may hear such evidence only to ascertain the veracity of findings of fact and conclusions of law reached by the Board. As the section does not authorize appeals *de novo*, the trial court may not hear additional evidence on matters not addressed by the Board. **This Court has consistently explained that judicial review of a decision by the Board is similar to review of decisions by most other administrative agencies.** It is a cardinal rule of administrative appeals that a reviewing court . . . shall apply the substantial evidence test to final decisions of an administrative agency such as the Board, but it must not itself make independent findings of fact or substitute its judgment for that of the agency.

Judicial review of administrative action differs from appellate review of a trial court judgment. In the latter context the appellate court will search the record for evidence to support the judgment and will sustain the judgment for a reason plainly appearing on the record whether or not the reason was expressly relied upon by the trial court. However, in judicial review of agency action the court may not uphold the agency order unless it is sustainable on the agency's findings and for the reason stated by the agency.

*Blackburn v. Bd. of Liquor License Comm'rs for Balt. City*, 130 Md. App. 614, 623-24 (2000) (emphasis added) (citations and internal quotation marks omitted).

"Of course, the reviewing court may substitute its judgment for that of the [Liquor] Board on questions of law." *Id*. at 624. In deciding whether to substitute its judgment on a question of law, a court should accord a degree of deference to the position of the administrative agency. *Md. Aviation Admin. v. Noland*, 386 Md. 556, 572 (2005). "Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts." *Id*. "An agency conclusion will not be upheld upon review, however, if based upon an error of law."

*Hoyle v. Bd. of Liquor License Comm'rs for Balt. City*, 115 Md. App. 124, 129 (1997).

## DISCUSSION

### I.

### Sufficient Findings of Fact

"There is no express requirement that the Board set forth specific findings of fact and conclusions of law. In order for any meaningful review to be conducted, however, the Board must do so, at least informally." *Blackburn*, 130 Md. App. at 624 (citation omitted).

Kougl argues that the Liquor Board did not make sufficient findings of fact to allow for meaningful judicial review. Specifically, Kougl contends that the Liquor Board's decision consists of the following two statements, neither of which contain any findings of fact:

> All right. The verdict is responsible for all three charges. The police department is not on trial here. Mr. Kougl is. And bar owners or licensees are responsible for the conduct of their employees, as I have said before, in all cases, in all bars, in the city of Baltimore.
>
> ***
>
> All right, my finding is responsible to all three charges and close him for one month, effective immediately.

According to Kougl, the above statements were insufficient to support a legal conclusion that Kougl violated the Rules at issue.

The Liquor Board responds that there is no requirement that it set forth specific findings of fact so long as its informal findings are sufficient to allow for "meaningful

6

appellate review."  Furthermore, the Liquor Board argues that it made informal findings of fact that were "sufficient for this Court to determine whether substantial evidence supports the Board's conclusion that Kougl violated the three Liquor Board Rules as charged."  We agree with the Liquor Board and shall explain.

As previously indicated, Kougl, as the licensee, was charged with violating Rules 4.17(a), 4.17(b), and 4.18.  Rule 4.17 provides:

> **Sexual Practices and Obscenity**
> (a)    No licensee shall permit or suffer his premises to be used for the purpose of any sexual activity, **nor shall any licensee permit or suffer any employee, patron or frequenter to solicit any person for prostitution or other immoral purposes.**
>
> (b)    **No licensee shall permit or suffer any person to appear in any act or other performance with breasts or the lower torso uncovered**; nor shall any licensee knowingly permit or suffer his premises to be used for the conduct, exhibition or performance of an obscene act or other performance.

(Emphasis added).

Rule 4.18 provides:

> **Illegal Conduct**
> No licensee shall commit or allow the commission on his premises of any act which shall be contrary to any federal, state or local statute, law or ordinance or against the public peace, safety, health, welfare, quiet or morals.[4]

---

[4] The Alcoholic Beverages Rules and Regulations for the Board of Liquor License Commissioners for Baltimore City were updated in 2015 and effective as of January 1, 2016. The new rules that correspond to old rules 4.17 and 4.18 are:

(continued...)

7

At the conclusion of the hearing on the charges

against Kougl, the following occurred:

> CHAIRMAN WARD:      All right. **The verdict is responsible for all three charges.** The police department is not on trial here. Mr. Kougl is. **And bar owners or licensees are responsible for the conduct of their employees, as I have said**

---

[4](...continued)

**Rule 4.15—Sexual Practices and Obscenity**

(a)      A licensee may not permit the licensed premises to be used for any sexual activity. A licensee, any employee, patron or frequenter may not solicit any person for prostitution or other immoral purposes.

(b)      A licensee may not permit a person to appear in an act or other performance with breasts or the lower torso uncovered. A licensee may not knowingly permit the licensed premises to be used for the conduct, exhibition, or any unlawful performance.

(c)      Section (b) of this rule does not apply to licensees that have a valid adult entertainment license issued by this Board.

**Rule 4.16—Illegal Conduct**

A licensee may not commit or allow the commission on the licensed premises of an act that is contrary to any federal, State or local statute, law or ordinance or that is against the public peace, safety, health, welfare, quiet, or morals.

The prior version of Rule 4.17 did not contain a subsection (c) exempting the application of the Rule to licensees with a valid adult entertainment license. There is nothing in the record, nor do the parties contend, that Kougl held a valid adult entertainment license for Club Harem at the time of the violations.

**before, in all cases, in all bars, in the city of Baltimore.**

**The only question now is punishment. . . .**

\*\*\*

All right, my finding is responsible to all three charges and close him for one month, effective immediately. And I'd be glad to hear from the other commissioners.

COMMISSIONER JONES: I agree. **I agree that there's a guilty for all charges. It's clear to me that this thing took place. I have confidence in the police department.** If I didn't, the system would have a great defect in it, so I agree to the one month close order.

CHAIRMAN WARD: Commissioner?

COMMISSIONER MOORE: I disagree. I don't think that the evidence substantiates the charges. And I'm concerned that there was a lapse of eight months. And I think that is extraordinary. It is unusual and it is not acceptable practice. And I think that that argues against a finding of guilt. So I say no.

CHAIRMAN WARD: Two to one. You heard the thing, you heard the penalty, sir. Good luck to you.

(Emphasis added).

9

The excerpt above makes clear that Commissioner Jones expressly relied on Det. Jackson's testimony, and Chairman Ward implicitly relied on such testimony. Moreover, Kougl, in his testimony, did not dispute any of the evidence presented in Det. Jackson's testimony, so a finding of guilty necessarily meant that Chairman Ward and Commissioner Jones credited Det. Jackson's testimony as true.[5]

Furthermore, a "Board Summary" was issued after the hearing, which set forth the factual basis for each violation:

> **Violation of Rule 4.17(a)** "No licensee shall permit or suffer his premises to be used for the purpose of any sexual activity, nor shall any licensee permit or suffer any employee, patron or frequenter to solicit any person for prostitution or other immoral purposes. (*Re: April 25, 2013, dancer solicited undercover police officer for sexual intercourse*) **GUILTY 2-1**

> **Violation of Rule 4.17(b)** "No licensee shall permit or suffer any person to appear in any act or other performance with breasts or the lower torso uncovered; no[r] shall any licensee knowingly permit or suffer his premises to be used for the conduct, exhibition or performance of an obscene act or other performance" (*Re: April 25, 2013, dancer exposed herself to undercover police officer*) **GUILTY 2-1**

> **Violation of Rule 4.18** "No licensee shall commit or allow the commission on his premises of any act which shall be contrary to any federal, state or local statue [sic], law or ordinance or against the public peace, safety, health, welfare, quiet or morals." (*Re: April 25,*

---

[5] The existence of "the VIP" appears to be the only contested factual finding. In his testimony, Kougl denied that a "VIP room" existed at Club Harem. According to Det. Jackson, however, Brickhouse never referred to a room, but rather stated that she and Det. Jackson could "go up to the VIP." Brickhouse could have been referring to the employees' dressing room or Kougl's offices, both of which are located "upstairs" at Club Harem.

*2013, dancer solicited undercover police officer for sexual intercourse; dancer exposed herself to undercover police officer*)
**GUILTY 2-1**

(Italics added) (bold in original). The facts supporting each violation, as emphasized in italics above, tracks Det. Jackson's testimony, and provides a sufficient factual basis to allow for meaningful judicial review.

## II.

## Strict Liability

Kougl argues that Rules 4.17 and 4.18 require some evidence or inference therefrom that Kougl suffered, permitted, or allowed solicitation and nudity to occur, and there was no evidence to support such a finding. According to Kougl, there was insufficient evidence for the Liquor Board to infer that Kougl permitted such conduct to occur "merely by reason that the dancer solicited the detective."

The Liquor Board responds that the three violations "are, as a matter of law, strict liability offenses," none of which require "a licensee's knowledge of the impermissible conduct." The Liquor Board analogizes Rules 4.17(a) and (b) to Rule 4.01(a), which prohibits sales of alcohol to minors, to argue that both Rules "contain[] both a strict liability prohibition and a second provision with a knowledge requirement." As for Rule 4.18, the Liquor Board argues that it "contains no knowledge or mens rea language. Therefore, it describes a strict liability offense." According to the Liquor Board, Kougl was found guilty of violating the strict liability portion of the Rules.

11

By virtue of its argument that the charged violations are strict liability offenses, the Liquor Board concedes that the evidence adduced at the hearing was insufficient to find that Kougl had actual or constructive knowledge of the violations. Upon review of the record, we agree that there was simply no evidence of Kougl's actual or constructive knowledge of the violations.

Whether Rules 4.17 and 4.18 impose a strict liability standard on a licensee depends on the meaning of the words "suffer," "permit," and "allow" as used in the Rules. In determining the meaning of such words, "we apply well-settled rules of statutory construction, the cardinal rule of [which] is to ascertain and effectuate the intent of the Legislature." *Assateague Coastkeeper v. Md. Dep't. of Env't*, 200 Md. App. 665, 708-09 (2011) (citations and internal quotation marks omitted).

> In so doing, we look first to the normal, plain meaning of the language of the statute, read as a whole so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory. If the language of a statute is clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends. Where the language of the statute is ambiguous and may be subject to more than one interpretation, however, we look to the statute's legislative history, case law, purpose, structure, and overarching statutory scheme in aid of searching for the intention of the Legislature.

*Whitley v. Md. State Bd. of Elections*, 429 Md. 132, 149 (2012) (citations and internal quotation marks omitted).

In accord with the above standard, we turn to the plain meaning of the subject terms in the Rules. Black's Law Dictionary defines "suffer" as:

12

> To allow, to admit, or to permit. **It includes knowledge of what is to be done under sufferance.** To suffer an act to be done or a condition to exist is to permit or consent to it; to approve of it, and not to hinder it. **It implies knowledge**, a willingness of the mind and responsible control or ability to prevent.

Black's Law Dictionary 1432 (6th ed. 1990) (emphasis added) (citations omitted). "Permit" is defined as: "To suffer, allow, consent, let; to give leave or license; to acquiesce, by failure to prevent, or to expressly assent or agree to the doing of an act." *Id.* at 1140. Finally, Black's Law Dictionary defines "allow" as:

> The word has no rigid or precise meaning, its import varying according to circumstances or context in connection with which it is used. It may mean to bestow or assign to any one as his right or due. To approve of, accept as true, admit, concede, adopt, or fix. To grant something as a deduction or an addition; to abate or deduct; as, to allow a sum for leakage. **To sanction, either directly or indirectly, as opposed to merely suffering a thing to be done; to acquiesce in; to suffer; to tolerate.**

*Id.* at 76 (emphasis added) (citations omitted).

No Maryland appellate opinion exists regarding the meaning of these words in the context of the Liquor Board Rules. Other jurisdictions that use "suffer," "permit," or "allow," in their liquor board rules are divided on whether such terms impose a strict liability standard, or whether knowledge on the part of the licensee must be proven.

Wisconsin, Oregon, and New Jersey courts have held that their states' liquor board rules, all of which use the words "suffer," "permit," or "allow," impose strict liability on the part of the licensee. In *City of West Allis v. Megna*, the Supreme Court of Wisconsin held that an ordinance that stated that no licensee shall "either directly or indirectly suffer or

permit any person of either sex under the age of 21 years . . . to enter or be on such licensed premises for any purpose," imposed a strict liability standard. 133 N.W. 2d 252, 253 (Wis. 1965). The Court determined that "[p]roof of knowledge on the part of the tavern keeper that the patron is actually under age is not required by the statute in order to obtain a conviction," and that such standard "is a price that the operator pays for the privilege of becoming licensed." *Id*. at 254.

Similarly, the Court of Appeals of Oregon held in *DK Entertainment, LLC v. Oregon Liquor Control Commission* that, when interpreting an ordinance stating that "'[n]o licensee or permittee will permit any unlawful activity on the licensed premises or in areas the licensee controls that are adjacent to or outside the premises,'" the Oregon Liquor Control Commission "may impute to the licensee the knowledge of the licensees employees." 278 P.3d 112, 113 n.2, 114 (Or. App. 2012). Finally, in *Division of Alcoholic Beverage Control v. Maynards Inc.*, the Supreme Court of New Jersey held an ordinance providing that "[n]o licensee shall allow, permit or suffer in or upon the licensed premises any unlawful possession of or any unlawful activity pertaining to" narcotics and other controlled dangerous substances imposed a strict liability standard. 927 A.2d 525, 536 (N.J. 2007). The Court noted that "[i]t has long been the law in New Jersey that, in the context of the regulation of alcoholic beverages, 'the word suffer . . . imposes responsibility on a licensee, *regardless of knowledge*, where there is a failure to prevent the prohibited conduct by those occupying the premises with his authority.'" *Id.* at 538 (ellipses and italics in original).

14

Conversely, other courts, such as those in Colorado, California, New York, and Washington, have held that the terms "suffer," "permit," or "allow" require actual or constructive knowledge. In *Full Moon Saloon, Inc. v. City of Loveland*, the Colorado Court of Appeals held that a statute making it unlawful to, among other things, "permit the sale, serving, giving, or procuring of any alcohol beverage to or for a person under the age of twenty-one years" required that "some level of knowledge by the licensee must be established by the evidence." 111 P.3d 568, 569-70 (Colo. App. 2005). The Court explained:

> **The word "permit" connotes affirmative or knowing conduct. Thus, licensees and their employees and agents "permit" such conduct if they have actual knowledge of the violation or have constructive knowledge that it is occurring.**
>
> \*\*\*
>
> Our conclusion that constructive knowledge of liquor code violations is sufficient to hold a licensee responsible for permitting the violation is consistent with cases from other jurisdictions. *See Spitz v. Mun. Court*, 127 Ariz. 405, 621 P.2d 911 (1980) (licensee is deemed to have constructive knowledge of the age of underage buyer if licensee provides alcohol to the minor and fails to follow certain procedures); *Laube v. Stroh*, 2 Cal. App. 4th 364, 3 Cal. Rptr. 2d 779 (1992) (to suspend liquor license, evidence must be presented that licensee had either actual or constructive knowledge of activity); *Pinacoteca Corp. v. Dep't of Bus. Regulation*, 580 So.2d 881 (Fla. Dist. Ct. App. 1991) (where activity is persistent and recurring, licensee's knowledge of the activity may be inferred); *State v. Engberg*, 109 Idaho 530, 708 P.2d 935 (Ct. App. 1985) (violation may be found if licensee had constructive knowledge of the prohibited activity); *Town & Country Lanes, Inc. v. Liquor Control Comm'n*, 179 Mich. App. 649, 446 N.W.2d 335 (1989) (licensee violated liquor license rule by failing to exercise reasonable diligence to ascertain the

15

age of underage customer); *Leake v. Sarafan*, 35 N.Y.2d 83, 358 N.Y.S.2d 749, 315 N.E.2d 796 (1974) (to sustain a violation, licensee must have knowledge of the activity or the opportunity through reasonable diligence to acquire knowledge of the alleged acts); *Smith v. Bd. of Liquor Control*, 96 Ohio App. 396, 121 N.E.2d 920 (1954) (licensee must have actual or constructive knowledge of prohibited activity) *Tex. Alcoholic Beverage Comm'n v. Sanchez*, 96 S.W.3d 483 (Tex. App. 2002) (to suspend liquor license, evidence must be presented that licensee had either actual or constructive knowledge of activity); *Reeb, Inc. v. Wash. State Liquor Control Bd.*, 24 Wash. App. 349, 600 P.2d 578 (1979) (to "permit" a violation, licensee must have actual or constructive knowledge of the activity).

*Id*. at 570-71 (emphasis added).

Similarly, in *Laube v. Stroh*, the Court of Appeal of California "h[e]ld that a licensee must have knowledge, either actual or constructive, before he or she can be found to have 'permitted' unacceptable conduct on a licensed premises." 3 Cal. Rptr. 2d 779, 788 (Cal. App. 1992). The Court continued: "It defies logic to charge someone with permitting conduct of which they are not aware." *Id.* Finally, the Court noted that "[f]ailure to prevent the problem from recurring, once the licensee knows of it, is to 'permit' by a failure to take preventive action." *Id*. at 789.

Likewise, in *Leake*, the Court of Appeals of New York noted the following regarding the statutory words "suffer" or "permit":

There is no particular mystery or magic in the language of the statute. This court in *Matter of Migliaccio v. O'Connell* defined the intent of the statute when it stated that **in considering what is implied by the phrase suffer or permit as employed in the statute** quoted above, **we are guided by what was written for this court** (per Cardozo, J.) in *People ex rel. Price v. Sheffield Farms*: **Sufferance as here prohibited implies knowledge or the**

16

**opportunity through reasonable diligence to acquire knowledge.** This presupposes in most cases a fair measure at least of continuity and permanence.

315 N.E.2d at 797 (emphasis added) (citations and internal quotation marks omitted).

Finally, in *Reeb*, the Court of Appeals of Washington held:

> **The word "permit"** as used in the regulation does not imply that the licensee must have permanently sanctioned the prohibited act; it **refers to the licensee's actual or constructive knowledge of the circumstances which would foreseeably lead to the prohibited activity.** Reeb was aware of the propensity of its dancers to engage in questionable conduct and chose nevertheless to maintain topless dancing on its licensed premises. Under these circumstances, the Board could find that Reeb permitted the conduct in violation of [the Liquor Board Rules]. This violation is sufficient to support the 7-day license suspension imposed by the Board.

600 P.2d at 581 (citation omitted).

Considering the plain meaning of the words "suffer," "permit," and "allow," we conclude that the use of those words in Rules 4.17 and 4.18 necessarily require that "some level of knowledge by the licensee must be established by the evidence." *Full Moon Saloon*, 111 P.3d at 569. As indicated above, the definition of "suffer" expressly states that "[i]t includes knowledge of what is to be done under sufferance." Black's Law Dictionary at 1432. The terms "permit" and "allow" also imply knowledge of what is to be permitted or allowed. *See First Nat'l Bank & Trust Co. of Port Chester v. New York Title Ins. Co.*, 12 N.Y.S.2d 703, 709 (1939) ("It has been said that every definition of 'suffer' and 'permit' includes knowledge of what is to be done under the sufferance and permission, and intention that what is done is to be done.").

17

We are fully cognizant of the strong public policy considerations behind requiring a strict liability standard in the Liquor Board Rules. Unlawful or immoral activities may be associated with places where alcoholic beverages are sold. However, one of the primary purposes of the Liquor Board Rules is to clearly inform licensees of their responsibilities regarding prohibited activities so that they can conform their conduct and the conduct of their businesses to be in compliance with the Rules. Interpreting the words used in the Liquor Board Rules at variance with their plain meaning does not advance the public purpose of achieving compliance with the Rules. Although we are obligated to give deference to the Liquor Board's interpretation of its Rules, *see Noland*, 386 Md. at 572, "[a]n agency conclusion will not be upheld upon review, however, if based upon an error of law," *Hoyle*, 115 Md. App. at 129. Accordingly, we hold that the Liquor Board erred in interpreting the words "suffer," "permit," and "allow" in Rules 4.17 and 4.18 to impose a strict liability standard on licensees.[6]

We also hold that the knowledge requirement implicit in the terms "suffer," "permit," and "allow" can be satisfied by proof of either actual or constructive knowledge on the part of the licensee. *See Full Moon Saloon*, 111 P.3d at 570. Actual knowledge is, of course, actual awareness of the prohibited activity. Actual knowledge also includes the concept of "deliberate ignorance" or "willful blindness." *See Rice v. State*, 136 Md. App. 593, 604

---

[6] Nothing in this opinion should be interpreted as precluding the Liquor Board from imposing a strict liability standard on licensees, so long as the language of the Liquor Board Rules explicitly provides for such standard.

18

(2001).  In *State v. McCallum*, Judge Chasanow explained the meaning of this form of

knowledge in a concurring opinion:

> **There is more than one mental state that may constitute "knowledge."  The first and highest form of "knowledge" is actual knowledge, that is, an actual awareness or an actual belief that a fact exists.  A second form of "knowledge" is what has often been called "deliberate ignorance" or "willful blindness."** R. Perkins, <u>Criminal Law</u>, Ch. 7, § 4 at 687 (1957).  **The latter form of "knowledge" exists where a person believes that it is probable that something is a fact, but deliberately shuts his or her eyes or avoids making reasonable inquiry with a conscious purpose to avoid learning the truth.** *See* 1 W. LaFave & A. Scott, <u>Substantive Criminal Law</u>, § 3.5 at 307 (1986), and authorities cited therein.  In *United States v. Jewell*, 532 F.2d 697 (9th Cir.), *cert. denied*, 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976), the 9th Circuit Court of Appeals noted that the deliberate ignorance or willful blindness form of knowledge has been accepted by leading commentators in the United States and in England.  The opinion quoted from Professor Glanville Williams' <u>Criminal Law: The General Part</u>, § 57 at 157, 159 (2d ed. 1961), as follows:
>
>> "To the requirement of actual knowledge there is one strictly limited exception. . . .  **[T]he rule is that if a party has his suspicion aroused but then deliberately omits to make further enquiries, because he wishes to remain in ignorance, he is deemed to have knowledge**. . . .   The rule that wilful blindness is equivalent to knowledge is essential, and is found throughout the criminal law."
>
> *Id.* at 700.

321 Md. 451, 458-59 (1991) (Chasanow, J., concurring) (emphasis added).

Constructive knowledge, however, implies knowledge where a licensee should have

known of the prohibited activity if reasonable care and diligence had been exercised.  *See*

19

*Leake*, 315 N.E.2d at 797 (stating that "it must be demonstrated that the licensee had knowledge or the opportunity through reasonable diligence to acquire knowledge of the alleged acts"); *Morgan v. Bd. of Water Works of Pueblo*, 837 P.2d 300, 303 (Colo. App. 1992) (stating that, if in the exercise of ordinary diligence a party should have known a fact, it will be deemed to have knowledge).

The Colorado Court of Appeals explained constructive knowledge as follows:

> Constructive knowledge may be inferred if the conduct occurs openly, such that a reasonable person would observe it. If knowledge of the prohibited conduct could have been obtained through the exercise of reasonable care and diligence, constructive knowledge may be inferred.
>
> Applying a constructive knowledge standard does not place an undue burden on the licensee because constructive knowledge requires only reasonable care and diligence and does not require extraordinary vigilance. Constructive knowledge means knowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person.

*Full Moon Saloon*, 111 P.3d at 570 (citations and internal quotation marks omitted).

Nevertheless, the Liquor Board argues that Rule 4.17 is similar to Rule 4.01(a), which we held in *Hoyle* to impose strict liability. We disagree.

Rule 4.01(a) provides: "No licensee shall sell or furnish alcoholic beverages to any person under twenty-one (21) years of age or to any person with the knowledge that such person is purchasing or acquiring such beverages for consumption by any person under twenty-one (21) years of age." *Hoyle*, 115 Md. App. at 130. In *Hoyle*, the Liquor Board ruled that Martini's Bar had violated Rule 4.01(a) when one of its employees served alcohol

20

to a minor. *Id*. at 128. Martini's Bar appealed, arguing that this Court "should read a 'due caution' provision into the [R]ule." *Id*. at 131. We declined to do so, and instead held that the Rule "imposes strict liability for the sale on the licensees." *Id*. at 133.

Our holding in *Hoyle* is clearly distinguishable from our holding in the case *sub judice.* Rule 4.01(a), unlike Rule 4.17, does not use the words "suffer," "permit," or "allow," which, as explained above, necessarily include an element of knowledge. Instead, Rule 4.01(a) sets forth a simple directive—"No licensee shall sell or furnish . . . .", which carries no implication of knowledge.

Finally, because the word "knowingly" appears in the second independent clause ("second clause"), and not in the first independent clause ("first clause"), of Rule 4.17(b), the Liquor Board claims that such sentence construction necessarily implies a strict liability standard in the first clause. Again, we disagree.

To reiterate, Rule 4.17(b) states:

> No licensee shall permit or suffer any person to appear in any act or other performance with breasts or the lower torso uncovered; nor shall any licensee knowingly permit or suffer his premises to be used for the conduct, exhibition or performance of an obscene act or other performance.

The first clause clearly identifies the prohibited act—any person "appear[ing] . . . with breasts or the lower torso uncovered." On the other hand, the second clause prohibits the performance of an "obscene act or other performance." In our view, the word "knowingly" appears in the second clause because an element of knowledge is required to constitutionally

21

regulate obscenity, a class of unprotected speech that is not clearly defined in First Amendment jurisprudence. *See generally Miller v. California*, 413 U.S. 15, 20 (1973) (summarizing "the somewhat tortured history of the Court's obscenity decisions").

Accordingly, we hold that the Liquor Board erred in finding that Kougl was guilty of violating Rules 4.17(a), 4.17(b), and 4.18, because there was no evidence that Kougl had actual or constructive knowledge of his employee's prohibited activity.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO ENTER A JUDGMENT REVERSING THE DECISION OF THE LIQUOR BOARD RENDERED ON JULY 17, 2014. COSTS TO BE PAID BY APPELLEE.**